### Abraham Ortiz v. State.

#### No. 2055. Decided December 11, 1912.

**1.—Rape—Continuance—Bill of Exceptions—Co-defendant.**

Where the overruling of the motion for continuance, on account of the absence of defendant's co-defendant, was not reserved by bill of exceptions, the same could not be considered; besides, the motion was correctly overruled.

**2.—Same—Evidence—Bills of Exception.**

Where all the bills of exception, with reference to the admissibility of testimony, were totally insufficient and defective, the same could not be considered on appeal; besides, the testimony with reference to the three crimes committed by defendant; to-wit: that of rape, murder and robbery, were so interwoven and connected that the testimony with reference to them was all admissible.

**3.—Same—Complaint of Prosecutrix—Evidence.**

Where, upon trial of rape, the testimony of the prosecutrix showed that she was prevented by defendant's partner and companion in crime from making complaint earlier than she did, and did so as soon as she could, there was no error in admitting this testimony.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial of rape, the evidence sustained the conviction, assessing the death penalty, there was no reversible error.

Appeal from the District Court of Hidalgo. Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of rape; penalty, death.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of rape and the death penalty assessed. We do not propose to give in detail the evidence,—simply an outline of it. On Sunday, February 18, 1912, Florencia Luis, with her husband, Martin Martinez, went over from Hidalgo County, Texas, across the river into Mexico to the little town of Reynosa, where they made some purchases of little things, such as hosiery, peppers, tomatoes, etc., which she brought back with them in a paper bag. Her husband, when in Reynosa, had about $20 in money. He spent some $2 or $3 of this and carried the remainder wrapped with a cloth in his pocket when they left there. He also had

a certain open-faced watch which he also carried in his pocket. After completing their purchases they came back from Mexico, passing through the town of Hidalgo on their way to the camp of a man who lived near there where they were at work. In going from Hidalgo they passed a cemetery perhaps two-thirds of a mile from the town and reached some six or seven hundred yards beyond this cemetery. Shortly before they passed along there a workman in the cemetery saw the appellant and his companion, Domingo Gonzales, together near this cemetery. Soon after this said Florencia and her husband met these same persons but had no conversation with them at the time,—merely the ordinary greetings. They were strangers to one another. Florencia and her husband, after meeting them, proceeded on their way but went only a short distance when appellant and Gonzales slipped up behind them and, without any warning or knowledge by either, appellant struck her husband in the back of the head with a large stick two licks, one following the other. From the first he began staggering but with the second lick appellant crushed his skull and killed him. Gonzales at the time was armed with a knife and at once after the murder of her husband by actual force and threats to kill her, forced Florencia to go into the brush some 75 or 100 feet from where her husband lay, and immediately ravished her. Appellant remained at the body of her husband while Gonzales ravished her, she begging, protesting and pleading. Immediately after Gonzales ravished her he called appellant, furnishing him his knife, and Gonzales taking from appellant the club with which the killing had been done. Appellant then by actual force and threats of killing her immediately proceeded also to ravish her, Gonzales going back to the husband's body while this was being done. Within the space of about two hours they alternately ravished her in the same way, each three times. It seems at first they were not sure they had killed her husband dead, which accounted for the fact that each watched the body while the other, the first time, ravished the woman. After each of these first acts they then took the body of the husband into the brush some 100 feet from the road and left it there. This killing and first ravishment occurred about 5 o'clock in the evening. They both remained there with the woman from that time until about dark, 7 o'clock in the evening. It is not specifically stated by any witness, yet, from what is stated and the surroundings described, we conclude that the place where this murder and rape occurred was an unfrequented and secluded place and that it was in the timber or brush. After keeping the woman there approximately two hours and each, after murdering her husband, ravished her three times, the two by agreement separated. Appellant indicated to Gonzales where he was going, stating first to one place in Texas and the other over in Mexico. Gonzales was to take and did, by force and threats of murdering her if she refused to go, force her to go with him after night to some place where he was staying, the distance not given, but from the evidence

we conclude not a great way from where this murder and rape occurred. He took her to his room, forced her to stay in the room with him that night, worked right around the house all the next day and prevented her from escaping or communicating with anyone until about night. He then left the place to go some distance to buy supplies. Florencia seeing this, immediately communicated to the other man and woman at this house what had been done to her, induced them to accompany her to the road a short distance from the house, when she left them and ran as rapidly as she could all the way from there to the camp where she and her husband had been working. She immediately communicated to persons there what had occurred to her and her husband, sought their protection and induced some of her friends to go with her nearly a mile to the justice of the peace. They did so and she at once informed the justice of the peace of the murder of her husband and the rapes that had been committed upon her.

It seems that her story of the horrible and unprecedented crimes was such as to stagger the credulity of the justice of the peace,—so much so that he did not then, it being night, himself or have any of the other officers investigate the matter, but deferred it till morning. In the meantime she told her story to her husband's employer and other friends, and they themselves personally, and in addition, induced the officers the next morning to make an investigation. They obtained from her a description of the locality where the murder and rapes had been committed and upon making an investigation found, and identified later, the body of her husband with the back of his skull crushed, a pool of blood where the body had first fallen at the road and where it had been removed some 100 feet from the road in the brush where it was found. They also, on the ground in this same immediate locality some 75 or 100 feet from the road in the brush, found some of the articles of merchandise she says she and her husband had purchased at Reynosa, and where persons had been lying on the ground, and prints of the feet and body were such as to confirm the woman's detail of the rapes that had been committed upon her. Four such places, if not six, the evidence shows, were thus found. She did not know the names of either of her husband's and her assailants, but gave such a description and information of the name of one of them and some data about the other that her friends and the officers at once sought Gonzales, but failed to find and arrest him. He escaped. They did find appellant, and the woman fully and completely identified him as the man who had struck the licks that killed her husband and who had immediately and repeatedly ravished her shortly thereafter. Appellant was taken to the vicinity where the crime had been committed and when asked if he could point out where the killing occurred, the instrument with which the licks were struck and where the body was, stated that he could and he himself took the parties to the place, showing the pool of blood where her husband had first been felled, which had been covered with sand,·

and to the body secreted in the brush. He also then identified the stick with which the killing was done.

We doubt if the criminal annals of this State will show such atrocious crimes as this record discloses.

The court gave a full and correct charge in the case. There is no complaint whatever thereof either of commission or omission. Appellant urges in his motion for new trial that the court erred in overruling his motion for a continuance on account of the absence of said Domingo Gonzales, his companion and partner in these crimes. The motion does not appear in the record, no bill of exceptions was taken thereto and none appears in the record. The record discloses that the officers hunted for Gonzales to arrest him for these crimes, but that he made his escape. We can not consider this point without it being shown by a bill of exceptions, but even if there had been a bill, the court correctly overruled the application.

In some grounds of the motion for new trial it is urged that the court erred in permitting the testimony of certain witnesses on certain points, but this is not shown by bills of exceptions in the record and can not be considered. However, there are four bills of exceptions in the record,—three of them complaining of certain testimony of said woman Florencia Luis. The other of the testimony of a doctor.

This is a companion case to another against the same appellant for the murder of said Florencia's husband, this day decided. All the bills of exception in this case are fully as defective and insufficient, if not more so, than those in said other case, and the decision and discussion of them in that case pretermits any further in this. The only difference between the two cases and the character of objections is, that the charge in this case is for the rape of said Florencia and in the other case it is for the murder of her husband. The three crimes of murder, rape and robbery by appellant and his said companion and partner in crime, are so interwoven and connected that the testimony properly admissible to tell of one, almost necessarily, if not quite so, includes each of the others.

However, in this, the rape case, there is another reason and ground why the testimony of said Florencia of the fact of her being prevented by force from complaining of the rape that had been committed upon her and complaining thereabout Monday night following the act the day before, being as soon as she could do so, is admissible in that it is always permissible in trials for the crime of rape, for the State, as a part of its case, to prove that the ravished woman made complaint at the first opportunity she had. Her testimony in this case showing that she was prevented by appellant's partner and companion in the crimes from making complaint earlier than she did and doing so as soon as she could, is especially and peculiarly applicable in this case. Pefferling v. State, 40 Texas, 487; Rogers v. State, 1 Texas Crim. App., 187; Topolanck v. State, 40 Texas, 160; Ruston v.

State, 15 Texas Crim. App., 324; Lights v. State, 21 Texas Crim. App., 308; Johnson v. State, 21 Texas Crim. App., 368; Rhea v. State, 30 Texas Crim. Rep., 483; Castillo v. State, 31 Texas Crim. Rep., 145. It is needless to cite the many other cases.

We have carefully gone over and studied the evidence and record in this case as well as that in said companion case, and it is our opinion that the guilt of the appellant is shown beyond dispute, and that no error has been committed in the trial of the case which would authorize or justify this court to reverse the judgment of the lower court.

The judgment will, therefore, in all things be affirmed.

*Affirmed.*