### SAM KAUFMAN v. THE STATE.

No. 2341.   Decided May 14, 1913.

Rehearing denied June 18, 1913.

**1.—Concealing Stolen Property—Bills of Exception.**

Where, upon appeal from a conviction of concealing stolen property, the bills of exception did not point out the error in the admission of evidence and were defective in other respects, the court could not review them on appeal. Following Conger v. State, 63 Texas Crim. Rep., 315, and other cases.

**2.—Same—Evidence—Leading Questions—Bills of Exception.**

Where the bills of exception with reference to leading questions were defective, they could not be considered on appeal. Following Carter v. State, 59 Texas Crim. Rep., 73.

**3.—Same—Evidence—Other Offense.**

Where, upon trial of receiving stolen property, the court admitted in evidence testimony as to other contemporaneous offenses of the same character, and properly limited the same in the charge of the court to the question of knowledge, intent, system, etc., there was no error. Following Melton v. State, 63 Texas Crim. Rep., 362, and other cases.

**4.—Same—Case Stated—Other Offenses—Evidence—Accomplice—Corroboration.**

Upon trial of receiving stolen property, there was no error in admitting the testimony of an accomplice to the effect that he had made an agreement with the defendant to steal goods and deliver them to defendant on the occasion charged in the indictment, and also of similar transactions prior to the time the offense was charged to have been committed, in which he was corroborated by other testimony, the court limiting these other transactions to establish system of like crime committed by the defendant, and requiring corroboration of said testimony.

**5.—Same—Alibi—Charge of Court—Definition of Offense.**

Upon trial of receiving stolen property defendant must have had such control of the property as at least amounts to constructive possession, but actual corporeal possession is not necessary, and where it was shown that the defendant received the property constructively at a place designated by him, his personal presence was not necessary to complete the offense, and there was no error in the court's failure to charge on alibi, the court specifically requiring in his charge that the defendant must have received the goods knowing that they were stolen before he could be convicted.

**6.—Same—Argument of Counsel—Defendant's Witnesses.**

Where, upon trial of receiving stolen property, it developed that several relatives of the defendant were present at the time of the delivery of said stolen goods at the place where they were found, there was no error in permitting State's counsel to argue the fact that these relatives were not placed on the witness stand to testify. Following Sweeney v. State, 65 Texas Crim. Rep., 593.

**7.—Same—Evidence—Other Offenses—Moral Turpitude—Bill of Exceptions.**

Where appellant complained that the court refused to permit him on cross-examination of the principal State's witness to show that he was guilty of felonies, but the bill of exceptions showed that the court allowed the defendant to ask this witness about all indictments against him, and also as to the theft and burglaries which were involved in the system about which the witness was testifying, there was no error.

**8.—Same—Evidence—Impeaching Witness—Moral Turpitude.**

Where, upon appeal from a conviction of concealing stolen property, appellant complained that he had not been permitted to ask the chief State's witness, on cross-examination, whether he had not committed many robberies, and not that he had been indicted or convicted of robbery, there was no error in the court's refusal to permit him to do so, as the witness could not have been legally impeached, unless it was shown that he had been legally charged with a felony or a misdemeanor imputing moral turpitude.

**9.—Same—Principal—Accomplice—Theft—Concealing Stolen Property— Carving.**

Where, upon trial of concealing stolen property, the evidence clearly established that the defendant was guilty of this offense as a principal as charged in the indictment, and not as an accomplice to such receiving and concealing, the contention that he was an accomplice to the theft of the property, and, thereforce, could not be convicted of concealing and receiving the same, was untenable, inasmuch as theft of property is an entirely separate and distinct offense from that of an accomplice to theft of such property, and also an entirely separate and distinct offense from that of receiving and concealing said property, and the State had the right of choice as to which crime it would prosecute.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of receiving stolen property; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*Lively, Nelms & Adams* and *W. F. Ramsey,* for appellant.—As to question of accomplice and theft: Dawson v. State, 38 Texas Crim. Rep., 50; McCalister v. State, 45 id., 258; Davis v. State, 55 id., 495.

*C. E. Lane,* Assistant Attorney-General, and *Ben Savage,* for the State.—On question of extraneous crime: Hennessy v. State, 23 Texas Crim. App., 340; Mason v. State, 31 Texas Crim. Rep., 306; Dawson v. State, 32 id., 535.

On question of corroboration of accomplice: Still v. State, 50 S. W. Rep., 355; Pelton v. State, 60 Texas Crim. Rep., 412; Dugat v. State, 148 S. W. Rep., 789, and cases cited in opinion.

PRENDERGAST, JUDGE.—Appellant was convicted for concealing stolen property and his punishment fixed at eight years in the penitentiary.

Most, if not all, of the questions attempted to be raised by him are by some sixty bills of exception. A large number of them were refused outright by the court, stating that no exceptions were made and no bill taken on the trial. Of course, we can not consider them.

The State claims that the others in no way comply with the rules long and well established so that this court can review the questions attempted to be raised by them. We will quote two of them in full, except their headings, which merely state the number, style of the cause and the court where pending. One is: "Be it remembered that upon

the trial of the above entitled and numbered cause, the following proceedings were had:

"Fletcher Howard, a witness for the State, over the objection of the defendant, was permitted to testify that in the latter part of May, he, the witness, stole some eggs from the ·Santa Fe yards and delivered the same to the defendant herein, and that the defendant paid him $24 for same, to which defendant objected because same was evidence as to an extraneous and· independent matter and was immaterial, irrelevant and hurtful to defendant, to which the defendant then and there excepted at the time, and now tenders this his bill of exceptions, and asks that the same be approved, signed and filed as a part of the record in· this cause.

"Which is accordingly done, this — day of October, A. D. 1912, with this explanation. This matter was admitted as a part of the evidence of an extraneous theft committed under the contract with this witness and other negroes, and the goods delivered to the defendant, and was admitted as evidence of the 'system.' "

Another is: "Be it remembered that upon the trial of the above entitled and numbered cause, the following proceedings were had:

"W. H. Black, a witness for the State, over the objection of the defendant, was permitted to testify that he had shipped 100 cases of eggs from Clifton, Texas, to Ben Ablon at Dallas, Texas, and that thereafter he came to Dallas, Texas, and went to Ben Ablon's cold storage house and there found several cases of the eggs that were packed like eggs he shipped, and that said several cases of eggs had the name Sam Kaufman on same; that at the time he went to Ben Ablon's cold storage house and there looked at said eggs, that he had two detectives of the City of Dallas with him, that he found two carloads of eggs in said storage house and that the cases he saw compared with the ones he packed and shipped from Clifton to Ben Ablon at Dallas, defendant objected because same was as to extraneous and independent matter in no way connected with the case on trial, because there was no testimony showing that the name 'Sam Kaufman' was placed upon said egg cases by the defendant herein or that same was done with his knowledge or consent, and because same tended to prejudice the jury against the defendant, was irrelevant and immaterial, prejudicial and hurtful to defendant, to which the defendant then and there excepted at the time, and now tenders this his bill of exceptions and asks that the same be approved, signed and filed as a part of the record in this ·case.

"Which is accordingly done, this — day of ——, A. D. 1912, with this explanation. This was part of the evidence of extraneous crime, admitted by the court as evidence of 'system.' "

These are but samples of all of the others. Some of them may have a little more in the way of objections, others less. Not one of them is in such condition as to require or authorize the court to consider them. Conger v. State, 63 Texas Crim. Rep., 315; Ortiz v. State, 151 S. W. Rep., 1059; James v. State, 63 Texas Crim. Rep., 75.

Several other bills attempt to present that the county attorney was permitted to ask a certain claimed leading question. Each of these are as defective or more so than the others, but in no event do they present any error. Carter v. State, 59 Texas Crim. Rep., 73.

One of the most important questions attempted to be raised by most of these bills is appellant's contention that proof of other like crimes, or crimes of the same nature, alleged to have been committed by appellant, were inadmissible for any purpose. The rule is that independent. crimes by an accused are ordinarily inadmissible; that an accused can not be convicted of the crime for which he is on trial by showing that he committed at other times like crimes. But while this is the rule there are exceptions to it as well established as the rule itself. In fact, such exceptions might be considered, and are, also, rules as well established as the said rule above mentioned. These exceptions are stated by Mr. Wharton, one of the ablest law writers in this country, in his volume 1, section 31, on Criminal Evidence, as follows: (1) As a part of the res gestae; (2) to prove identity of person or of crime; (3) to prove scienter or guilty knowledge; (4) to prove intent; (5) to show motive; (6) to prove system; (7) to prove malice; (8) to rebut special defenses; (9) in various particular crimes.

In section 35 he says: "Evidence of collateral offenses often becomes relevant where it is necessary to prove scienter, or guilty knowledge, even though the reception of such evidence might establish a different and independent offense.

"In prosecutions for receiving stolen goods, guilty knowledge is the gist or substance of the offense to be established by the prosecution; and evidence of collateral offenses is admissible to establish such knowledge."

Again, in section 39, he says: "When the object is to show system, subsequent as well as prior collateral offenses can be put in evidence, and from such system identity or intent can often be shown. The question is one of induction, and the larger the number of consistent facts the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system. In order to prove purpose and design, evidence of system is relevant; and in order to prove system, collateral and isolated offenses are admissible from which system may be inferred." These exceptions or rules are so well established, have been so often applied and held by this court, that we think it is unnecessary to collate. them, but see Melton v. State, 63 Texas Crim. Rep., 362, where a few of the cases and authorities are cited. See also Hennessy v. State, 23 Texas Crim. App., 340; Mason v. State, 31 Texas Crim. Rep., 306; Dawson v. State, 32 Texas Crim. Rep., 535; Pelton v. State, 60 Texas Crim. Rep., 412; Long v. State, 39 Texas Crim. Rep., 537. It is needless to cite the many other cases on these points.

The testimony of Fletcher Howard, who was an accomplice and a negro, was to the effect that he had worked for appellant and for appellant's brother and father, who run a mercantile establishment in Dallas

for a number of years prior and up to the time the offense charged in this case, commencing work with him and them in 1905, or 1906, and had worked for them off and on from that time up to the time of the offense charged in this case or shortly prior thereto; that his work therein was that of a porter in their saloon and driving a delivery wagon for appellant and his said father and brother, or appellant and one or the other of them in their grocery business; that for the years 1909 to 1912, inclusive, he had a contract with appellant and with him and his brother and father to the effect that he and his associates were to steal goods from the railroad cars and wholesale houses in Dallas, and appellant and they would buy them from him and his associates. And this contract was carried out by both of these parties during these years. Then he detailed several such transactions during the year 1912, prior to the time this offense was charged to have been committed; that in every instance appellant bought these stolen goods from him and his associates and paid him and them therefor, knowing at the time that they were stolen and that all these transactions were carried out in consummation and in accordance with said trade between them. It is unnecessary to detail these various transactions. This accomplice, Howard, was corroborated amply and sufficiently by other witnesses and circumstances tending to show and showing the said several transactions as testified to by Howard. The theft by Howard and his associates of the goods charged to have been received by appellant in this case was clearly and unquestionably established, not only by Howard, the accomplice, but by many other witnesses and circumstances clearly detailed in the evidence. As to these particular goods in this case Howard testified that in the evening before these goods were stolen at night he and his associate, who was with him and helped steal them, were to deliver them in appellant's barn for him, situated close to his said store and residence in Dallas. They were so delivered and found in said barn immediately after their delivery therein. It was also shown that appellant kept his horses at this barn and that he had charge of said barn. The goods charged to have been stolen and received by appellant in this case consisted of a case of dry goods,—different bolts thereof containing, of one grade, 2747 yards, worth about $17\frac{1}{2}$ cents per yard; and $768\frac{1}{2}$ yards of another grade, worth about $22\frac{1}{2}$ cents per yard, and of a total valuation of over $500.

In this case the evidence was amply sufficient to show appellant's guilt of the offense with which he was charged. The evidence of the various other comparatively recent offenses was clearly admissible in this case to establish and it did establish a system of like crimes committed by appellant.

The court, in his charge, properly told the jury for what purpose they could consider the evidence showing or tending to show said other crimes and that appellant was not on trial for the commission of any of those offenses and they could not convict him therefor.

The court also charged that said Fletcher Howard was an accomplice

and fully and properly required the corroboration of his testimony in accordance with law.

The testimony shows that the theft and delivery of the goods in this case occurred about 10 o'clock at night. Appellant also showed that he left his home and store, where said barn was in which said goods were delivered, about or shortly before 8 o'clock that night; that he went to a public speaking in the coliseum at the fair grounds, which was a mile and a half from said barn and said store and residence and remained at said public speaking until after 10 o'clock and did not return to his said home until 11:30 or later that night. In other words, he showed that he was not at said barn where said goods were placed at the time they were placed there, but at another and a different place. The court did not charge on alibi. He was requested to charge on that subject. The court gave this charge on the subject of receiving stolen property:

"I will define to you now what the law means by receiving property acquired by theft. You are instructed that if you believe from the evidence beyond a reasonable doubt that the property described in the indictment was obtained from W. D. Stetler by Amos Parker and Fletcher Howard, under circumstances and in such manner that the acquisition thereof comes within the meaning of the term theft, and you further find and believe from the evidence beyond a reasonable doubt that prior to the time that the same was so taken by the said Amos Parker and Fletcher Howard, a contract and agreement had been entered into by Fletcher Howard and Amos Parker on the one hand, and Sam Kaufman, or Sam Kaufman and others on the other hand, that the said Parker and Howard should steal the said property and deliver the same on the premises of the said Sam Kaufman, or in the barn under the control and management of the said Sam Kaufman, or under control of Sam Kaufman and others, and you further find and believe beyond a reasonable doubt that in pursuance of said agreement and contract with the said Sam Kaufman, if any, the said property was so fraudulently taken from the said W. D. Stetler and so delivered by the said Amos Parker and Fletcher Howard in the said barn or premises, owned and under the control and management of said Sam Kaufman, or under the control of Sam Kaufman and others, then this would constitute the receiving of said property by said Sam Kaufman."

Appellant urges that the court erred in refusing to charge on alibi and in giving the last charge quoted just above.

Mr. Bishop, in his New Criminal Law, volume 2, section 1139, in treating of the act of receiving stolen goods, says: "The leading doctrine here is that the goods must come under the control of the receiver; yet the control need not be manual. For instance,—if they are in the hands of a person whom he can command in respect of them, they may be deemed to have been received. And one who allowed a trunk of stolen goods to be sent on board a vessel in which he had taken passage, was held to have received them."

In 34 Cyc., page 517, in treating of the receiving, it is said: "To be convicted of receiving stolen goods, defendant must have had such control of the property as amounts to constructive possession, at least; but the possession need not be actual and corporeal. It may be through the instrumentality of another person, and the offender need not have seen the goods."

In Huggins v. State, 41 Ala., 393, which was a conviction for receiving stolen property, it is held:

"The charge given at the instance of the solicitor, to the effect that the defendant might commit the offense without seeing the property, was obviously correct. The defendant could certainly be guilty of committing the felony charged, through the instrumentality of others, without performing the act of receiving or buying in person, or actually seeing the property."

In the case of State v. Stroud, 95 N. C., 626, it is held: "The court charged, in substance, that if the meat after being stolen, was directed by the defendant to be carried to a certain place, he at the time knowing that it had been stolen, it was a receiving in the eye of the law. To constitute the criminal offence of *receiving,* it is not necessary that the goods should be traced to the actual personal possession of the person charged with receiving. It would certainly make him a *receiver* in contemplation of law, if the stolen property was received by his servant or agent, acting under his directions, he knowing at the time of giving the orders that it was stolen, for *qui facit per alium facit per se.* It is the same as if he had done it himself."

We are clearly of the opinion that the evidence in this case justified the jury to believe that appellant knew that these goods were stolen by Howard and his associates and that he directed that they should be delivered to him by placing them in his barn, which was done. This "was a receiving by him in the eye of the law." It was not necessary under the law that he should personally be present, nor manually receive the property under the circumstances of this case. The charge of the court above complained of was correct and no charge on alibi should have been given. The court in submitting the case specifically required the jury to believe beyond a reasonable doubt that the appellant received the goods knowing that they were stolen before they could convict him.

The court did not err in permitting the county attorney to argue that appellant had not placed on the stand and had them testify, any of his several relatives who were unquestionably shown to be present at the time of the delivery of said goods in said barn and when they were found and taken therefrom by the officers. Sweeney v. State, 65 Texas Crim. Rep., 59, 146 S. W. Rep., 883.

We have carefully considered all of appellant's claimed errors and have discussed the material ones. There being no reversible error, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 18, 1913.

PRENDERGAST, JUDGE.—In his motion for rehearing appellant, by his attorneys, expressly states that whatever might be their views touching the matters discussed and decided in the original opinion, they do not urge any error therein or rehearing thereof. But appellant presents and urges two questions only, which he claims were not referred to in the original opinion.

The first of these questions is that error was committed by the lower court refusing to permit him to ask the State's witness Fletcher Howard, and require him to answer, as set up in the thirty-seventh bill of exceptions. We will here state this bill. After the formal part of "Be it remembered," etc., the bill is:

"The court refused to permit counsel for the defendant, on cross-examination of said witness, Fletcher Howard, to ask said witness if he had ever committed robbery, and was confined by the court in his cross-examination of witness, to inquiries to thefts and burglaries, because said inquiry was a proper one, was tending to impeach said witness, Fletcher Howard, and the defendant expected to prove and could have proven by said Fletcher Howard, that he had committed many robberies and had been indicted for the offense of robbery, to all of which the defendant then and there excepted at the time, and now tenders this his bill of exceptions and asks that the same be approved, signed and filed as a part of the record in this case."

The court, in allowing this bill, qualified it with this explanation:

"The court allowed the defendant to ask this witness about all indictments against him and also allowed defendant to ask him about thefts and burglaries, these being involved in the system and contract he was testifying about. The court did refuse to allow him to be cross-examined as to whether he was guilty of robberies, and other extraneous crimes which were in no wise connected with the offense charged, nor involved in its contract and system of the Kaufmans and this witness."

By all of the decisions of this court this bill is wholly insufficient to require this court to consider the question attempted to be raised. Conger v. State, 63 Texas Crim. Rep., 312, and James v. State, 63 Texas Crim. Rep., 75. But suppose the bill was sufficient to require us to consider it. Taking the whole bill and the qualification thereof, it expressly shows that the court allowed the defendant to ask this witness "about all indictments against him." So that the statement in the bill, that he expected to prove by the witness that "he had been indicted for the offense of robbery," was not true as a matter of fact. The court, as stated, stated that he allowed him to ask the witness about all indictments against him.

The other feature of the bill shows that he wanted to impeach the witness by proving by him "that he had committed many robberies," not that he had been indicted or convicted of robbery, but to prove that he

was guilty of an independent crime without showing an indictment or conviction therefor.

Mr. Branch, in his Crim. Law of Texas, in section 868, lays down the correct rule in this language: "Mere accusations against, or evidence of particular acts of misconduct, are not admissible to affect the credibility of a witness. A witness can only be impeached as to other offenses by showing that he has been *legally* charged with a felony, or a misdemeanor imputing moral turpitude." And cites a large number of decisions of this court which clearly support his text. It is unnecessary to cite them here. We have many times recently had occasion to thoroughly investigate the law and our decisions on this subject. In the recent case of Wright v. State, 63 Texas Crim. Rep., 429, we held in effect this: "There is no question but that if a witness was offered for the purpose of proving as a matter of fact that the witness was guilty of specific offense involving moral turpitude, or of the grade of felony, where no legal proceeding had been instituted against him, such testimony would not be admissible. Conway v. State, 33 Texas Crim. Rep., 327." And we also held in that case, "that where a party is charged by complaint only, and sufficient time has elapsed for an indictment, and none has been preferred, that the mere fact of the arrest of a party on a complaint is not legal testimony to go to his impeachment." This bill of appellant, therefore, even if considered, presents no error.

The other question urged in appellant's motion for rehearing is, as we understand it, that the evidence in this case shows that appellant was an accomplice to the theft of the property with which he was convicted of fraudulently receiving and concealing, knowing it to have been stolen, and, therefore, was improperly convicted for receiving and concealing the property. Because he calls attention to two grounds only in his motion for new trial, which he claims raised the question. In the first of these grounds he quotes as follows: "The evidence, if same establishes any guilty connection of the appellant with the property described in the indictment, showed his connection with same to be that of accomplice and not as a principal offender." It is not stated in this, as is seen, with which particular feature he is an accomplice and not a principal offender,—whether the theft of it, or the receiving and concealing it. But the other ground of his motion for new trial, which he quotes, is to the effect that the evidence "would not show this defendant guilty of either receiving or concealing the property but would show him guilty as an accomplice in the commission of the offense of theft of the property." He couples these two grounds as raising the question he urges, so that, as stated above, as we understand, his contention is that the evidence in the case shows that he was an accomplice to the theft and not guilty of receiving and concealing the stolen property. This is further borne out by the evidence in the record which appellant quotes, which tends, even from his theory, to show that he was an accomplice to the theft of the property only.

We have carefully considered appellant's motion and his brief and

argument thereon, and the authorities cited. In discussing this question we will not cite the cases to any extent, because the principles that we lay down are so well and thoroughly established that authorities need not be collated.

The offense of theft of property is an entirely distinct and separate offense from that of an accomplice to the theft of such property, and also an entirely separate and distinct offense from receiving and concealing the same property. The theft of it is one offense, an accomplice to the theft of it is another offense and the receiving and concealing it, knowing it to be stolen, is another offense. An accused can not be convicted for either of the offenses upon an indictment for one of the other offenses. In other words, an accused can not be convicted as an accomplice to the theft of the property, nor for receiving and concealing the stolen property, upon an indictment for the theft of it. Neither can he be convicted for the theft of it, nor receiving and concealing it upon an indictment as an accomplice to the theft of it. Nor can he be convicted of the theft of it, or as an accomplice to the theft of it upon an indictment for the receiving and concealing it. The principle is clearly illustrated by the opinion of this court through Judge Hurt, in McAfee v. State, 14 Texas Crim. App., 668, thus:

"A steals a cow. B, with knowledge of the theft, buys the cow from A. Shall we say, *thereupon,* B stole the cow? Again, A steals a cow. B, with knowledge of the theft, buys from A. Are we not forced to say, *therefore,* B did not steal the cow, this being the real fact of the case?

"Theft is the fraudulent *taking* of property *from* the *possession* of the owner, or some one holding possession for him. *There must be a taking,* and no subsequent connection with the stolen property, be it in *good* or *bad* faith, honest or fraudulent, will constitute theft.

"If the evidence fails to connect defendant with the *taking,* unless by recent possession, this recent possession may be accounted for by proof of purchase, whether in good or bad faith; and defendant may in *law* urge the purchase, notwithstanding he had full knowledge that the seller had stolen the property. It is true that this would be receiving property knowing that it had been stolen, for which the purchaser, under an indictment charging *this offense,* could be tried and convicted. But appellant in the case at bar was tried for and convicted of *theft.* It was this charge, this offense, he was called upon to meet, and no other; and he had the right to meet and defeat the charge of theft with any matter which would secure that purpose, although his guilt of another offense should be developed." This principle has been so many times and so uniformly held by this court we do not cite any of the other cases, though they are quite numerous. What is said in the McAfee case, just above quoted, is equally applicable and might be used as a complete illustration of each of the offenses herein above specified, towit, that of an accomplice to the theft and that of receiving and concealing the stolen property, knowing it to be stolen.

Again, no person can be an accomplice without there is a principal, and in order to convict as an accomplice, even upon an indictment as an accomplice, the proof must show that there is a principal and that the principal is guilty of the main offense. In this instance, that of theft. So, in the offense of receiving and concealing stolen property. If a party were indicted as an accomplice to the receiving and concealing the stolen property, there must be a principal and that principal must be guilty of receiving and concealing it before the accomplice could be convicted as an accomplice to receiving and concealing it.

While the indictment in this case has five separate and distinct counts, as stated by appellant in his motion for rehearing, only one was submitted to the jury. The others were excluded from any submission. The one which was submitted, is the one only under which appellant was convicted. So that the case is treated as if only that one count had been in it. The others can not be used for any purpose.

The evidence in this case cited by appellant in his motion for rehearing in no way intimates or tends to intimate that appellant was an accomplice to the receiving and concealing of his stolen property. He alone is shown in it to be the principal in the receiving and concealing of this property. It is unnecessary to take up and collate the evidence. As we said in the original opinion: "We are clearly of the opinion that the evidence in this case justified the jury to believe that appellant knew that these goods were stolen by Howard and his associate and that he directed that they should be delivered to him by placing them in his barn, which was done. This 'was a receiving by him in the eye of the law.' It was not necessary under the law that he should personally be present, nor manually receive the property under the circumstances of this case." In the original opinion we also cited and quoted from the authorities which clearly showed that it was not necessary for the appellant to have been personally present and manually received and seen the property when it was delivered at the time and place which he designated. As stated above, appellant in his motion for rehearing did not contest any of the questions decided in the original opinion, and while not expressly assenting thereto, clearly impliedly did. But, however that may be, we are of the opinion that the evidence which the jury believed, clearly established that appellant was guilty of receiving and concealing the stolen property as a principal, as charged in the indictment, and not as an accomplice to such receiving and concealing. It might be that appellant could have been prosecuted and convicted, under the evidence cited by appellant, as an accomplice to the theft of the property, instead of having received and concealed it, but he has not the choice. The State has the choice of which crime originating out of the transaction it will prosecute him for. "One answerable for a criminal transaction may be holden for any crime, of whatever nature, which can be legally carved out of his entire offending. He is not to elect, but the prosecuting power is. If the evidence shows him to be guilty of a higher offense than he stands indicted for, or a lower, or

of one differing in nature, whether under a statute or at the common law, he can not be heard to complain,—the question being whether it shows him to be guilty of the one charged." 1 Bish. New Crim. Law, sec. 791; Whitford v. State, 24 Texas Crim. App., 489; Grisham v. State, 19 Texas Crim. App., 504. "A party may, in a criminal proceeding, be held to answer for any offense, great or small, which can be legally carved out of the transaction." Jackson v. State, 43 Texas, 421. "The prosecutor had a right to carve as large an offense out of this transaction as he could, yet must cut only once." Quitzow v. State, 1 Texas Crim. App., 47. It is needless to cite the many other authorities to this effect.

The motion for rehearing is overruled.

*Overruled.*