WILLIS RYAN v. THE STATE.

No. 15418. Delivered December 7, 1932.
Rehearing Denied January 11, 1933.
Reported in 55 S. W. (2d) 829.

The opinion states the case.

*P. R. Rowe,* of Livingston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, murder; the punishment, eight years in the penitentiary.

'This is the second appeal of this case. The former appeal will be found reported in 114 Texas Crim. Rep., 12, 23 S. W. (2d) 375.

The actors in this tragedy were all negroes. It seems that a supper and dance had been given at the home of one L. T. Gray. U. L. Hobbs, a witness for the state, testified that he had gone to said dance and supper and the car in which he drove there went close up to the porch and the man who was with him went in the house and he remained in the car; that the deceased, L. E. Henderson, was standing just outside of the house

on the porch talking to a girl named Polly and appellant's wife walked out and put her arms around the girl Polly; that about that time appellant came out on the gallery and hit his wife with a soda water bottle and then ran in the house; that the deceased left the porch and went out of the yard gate, and the appellant then came out of the house with a shot gun and shot the deceased in the back as deceased was going away from the house. The deceased died from the effects of said wounds a few hours later. The witness further testified that he could not tell what the appellant's wife and deceased were talking about while they were on the gallery.

The appellant testified that he had gone to the party about 6 o'clock that night with his wife and the deceased came to the party about 8:30 that night; that there was a report made to him that night about the deceased and his wife and he was told that the deceased and his wife and Polly Franklin were trying to go to Swartstown to a supper and he did not pay much attention to it at that time. When he first saw the deceased come in the house his wife popped her fingers and hollered "Oh, Daddy, he is here now," and said to appellant that her Daddy was here now, and she talked to deceased and tried to get him to dance with her and deceased told her he did not have any change; that Polly Franklin and his wife went out of the house and came back in about 5 or 10 minutes and he then went to deceased and told him, "I married this woman and I don't want her to be caught with you," and deceased said, "All right, I won't," and he, appellant, went back in and started dancing, and he then saw his wife and deceased going out of the house on the gallery and he then quit dancing and went out to the gallery and saw deceased and his wife standing on the far end of the gallery and just about that time somebody stepped up and he walked up and said, "What does this mean?" but not one of them said anything, and he then got a soda water bottle and hit the deceased and his wife and deceased ran, and he went back to the door and grabbed a shotgun and at the time he stepped off the door step deceased went out of the gate, and he then shot him. At the time he went out on the gallery, deceased had his arms around appellant's wife and it had been reported to him that he was trying to get her to go to Goodrich with him. When he went out on the gallery and saw deceased with his arms around his wife, he believed he wanted to have her and he believed the reports that had come to him were true and he believed deceased was trying to get his wife to go with him for the purpose of having intercourse with her.

There was considerable testimony offered pro and con, and a sharp issue was made as to the existence of the above insulting conduct alleged to have happened at the dance and which appellant claimed was the sole cause of the killing.

Bill of exception No. 1 complains of the following portion of the district attorney's closing argument, "Rowe, counsel for defendant, knew that 'Lucky Boy' Johnson was telling the truth, and he, Rowe, went out and consulted with Brock and dared not put him on the stand to show that 'Lucky Boy' Johnson did not tell the truth about it," and, in the presence and hearing of the jury, turned to appellant's counsel, shaking his finger at him, and, in a loud voice and excited manner, exclaimed, "You can put Jett Brock on the stand right now. I dare you to put him on the stand." Objection was made that the argument and challenge were not authorized by any evidence or any matters connected with the case, and for the further reason that the words and the manner and the tone of the challenges made by the district attorney were irrelevant, improper, inflammatory, and highly prejudicial to the rights of the defendant. It appears from the bill of exception that no objection was made by the appellant to the remarks of the district attorney in his opening argument to the jury relating to the same matter. It also appears from the bill that appellant's counsel, in his argument to the jury, replied to the argument of the district attorney relating to the witness Johnson. We do not think the language complained of, under the circumstances, was obviously of a nature to impair the rights of the appellant or to improperly prejudice his case before the jury. No charge was requested to instruct the jury to disregard said remarks. The defendant is not entitled to complain of improper argument of state's counsel which is occasioned and justified by the argument of his own counsel. Branch's Ann. P. C., sec. 364; Moore v. State, 65 Texas Crim. Rep., 453, 144 S. W., 603; Ray v. State, 35 Texas Crim. Rep., 354, 33 S. W., 869.

Bill of exception No. 2 complains of the following questions and answers of the witness Octavia Ryan, the wife of appellant: "I will ask you if you told me (county attorney) 'I am absolutely positive that I never talked to my husband at all that night when he shot L. E. Henderson,'" and thereupon the witness answered: "I had spoken to my husband that night before he shot L. E. Henderson. I told you that I was absolutely positive that I had never talked to my husband at all that night when he shot L. E. Henderson." The objection was because the witness was the wife of the defendant and the question was

taken from a purported statement taken ex parte from her by the county attorney prior to the trial without defendant's knowledge and consent; because the matter inquired about was not brought out by defendant on the direct examination of the witness and was an attempt to impeach the witness, the wife of the defendant, on matters not brought out on direct examination, and was an impeachment of the witness by an ex parte statement made by her to the county attorney; because the evidence was injurious and prejudicial to the rights of the defendant and was inadmissible for any purpose.

Bill of exception No. 3 complains that while the defendant's wife was on the witness stand as a witness for the defendant, on cross-examination, she was asked the following question: "I will ask you if you told me (county attorney) 'after I got in the house my husband came in there and this was the first time I seen him after supper,'" and over the objection of the defendant the witness was required to answer and did answer "Yes, sir."

The wife of a defendant may be impeached by proof of contradictory statements as to material matters inquired about on her examination in chief. Branch's Ann. P. C., sec. 153; Red v. State, 39 Texas Crim. Rep., 414, 422, 46 S. W., 408; Link v. State, 73 Texas Crim. Rep., 82, 164 S. W., 994. This evidence was not patently and obviously inadmissible per se and under certain circumstances would be admissible. Said bill does not show the surrounding antecedent testimony, on direct examination, or other matters from which we might detect error. A bill of exception to be considered must sufficiently set out the proceedings and attending circumstances below to enable the appellate court to know certainly that error was committed. A bill of exception to the admission or rejection of testimony should be sufficiently explicit to enable this court to fully understand and know all the facts on which the correctness or error of the ruling depends. Ortiz v. State, 68 Texas Crim. Rep., 608, 151 S. W., 1059; Harris v. State, 67 Texas Crim. Rep., 251, 148 S. W., 1074; Livar v. State, 26 Texas App., 115, 9 S. W., 552; Black v. State, 68 Texas Crim. Rep., 151, 151 S. W., 1053.

Bill of exception No. 4 complains that, while the witness Octavia Ryan, the wife of defendant, was on the witness stand as a witness in behalf of defendant and was being cross-examined by the county attorney, the county attorney asked her the following question: "Had you been having anything to do with him?" (referring to deceased and meaning to ask if the witness had been having intercourse with him). The bill shows that

before defendant's counsel could object, the witness answered, "Not since I have been married," and thereupon defendant's counsel objected. The bill shows that the court sustained the objection and instructed the county attorney not to ask her about that question and also instructed the jury not to consider it. This bill is subject to the same criticisms as that of bills 2 and 3, and shows no reversible error.

Bill of exception No. 5 complains that, while the state's witness, I. U. Henderson, was on the stand and testifying in behalf of the state concerning the sweater and belt worn by the deceased, L. E. Henderson, at the time of the shooting and after testifying that the sweater had been washed since the killing, the witness was permitted to testify, over defendant's objection, as follows: "I have with me some clothes L. E. Henderson had on when he was shot. It is a sweater and belt; that sweater and belt have been at home in the trunk since he was shot. I have been in possession of it all the time since it was taken off of him and nobody has worn the clothes since then and neither one of them have been worn since then." The bill further shows that the witness testified that the trunk in which the sweater and belt had been was his mother's trunk. The bill further shows that the witness lived with his mother and his mother was still living and she was then present in court. The bill further shows that the witness identified the sweater and belt and on offer of the state they were admitted in evidence. The appellant objected to the admission in evidence of the sweater and belt because they were not in the same condition as when taken off of deceased, having gone through the wash, and the witness had not had custody of the clothing, but another and different person had had custody thereof; that such person being in attendance upon the court, was not used to identify the clothes. Before the sweater and belt were offered in evidence they were positively identified by the witness as being the same belt and sweater worn by deceased at the time he was shot. In this instance, it is not made to appear by defendant's bill of exception or otherwise that the exhibition of the sweater and belt to the jury was improper and inadmissible. The mere fact that they had been kept in the witness' mother's trunk would not in itself be sufficient to reject said sweater and belt. It is disclosed by the evidence that the position of the appellant, when he fired the fatal shot, was a material inquiry on the trial. Viewing the matter as presented by the record, we are not prepared to say that the court erred in admitting the sweater and belt before the jury." It is permissible to introduce clothing in

evidence when the introduction serves to illustrate some point or solve some question, or serves to throw light on the matter connected with the proper solution of the case, and under no other circumstances, but whenever the introduction of such clothing would, in the light of the whole case, aid the jury in arriving at the very truth of the matter, the court should not hesitate to admit its production and exhibition." Branch's Ann. P. C., sec. 1855; Johnson v. State, 74 Texas Crim. Rep., 179, 167 S. W., 737; Adams v. State, 48 Texas Crim. Rep., 460, 93 S. W., 116.

By special requested charges in the case, as well as by exceptions and objections to the court's charge, it seems to be the appellant's contention that he was entitled to have the jury told in effect that, if the deceased was trying to get the appellant's wife to go to another place with him for the purpose of having carnal intercourse with him, and, if deceased had followed her out of the house for the purpose of inducing her to have intercourse with him, appellant would not be guilty of any offense. It seems, further, that it is appellant's contention that he was entitled to have the charge in keeping with article 1220 of the Penal Code, justifying a homicide when committed by a husband upon taking the wife in an act of adultery. We think the facts are entirely insufficient to raise this issue. According to appellant's own testimony and that of his witnesses, the deceased was talking to appellant's wife on a gallery where there were a number of people and in the presence of at least one other person; that he threw a bottle at deceased and also struck his wife with a bottle and then ran into the house, obtained a shotgun, and shot the deceased in the back while he was fleeing from him. We do not think the trial court erred in refusing to charge the jury that appellant should be acquitted if he reasonably believed that his wife and deceased were about to engage in adulterous intercourse, or that they had engaged in such act. It is not within the contemplation of article 1220, P. C., which justifies a homicide by the husband when the deceased is taken in the act of adultery with his wife, if such killing takes place before the parties separate that one may justify a homicide upon such ground when the testimony goes no further than to place the wife and the deceased together where others were present at the time, and merely because the appellant was told that the deceased had invited his wife to go with him to another place and because of the fact that deceased had his arm around appellant's wife at the time. See Holman v. State, 92 Texas Crim. Rep., 364, 243 S. W., 1093.

Other charges requested by appellant were either covered by the main charge of the court or are plainly on the weight of the evidence. We do not think that there is any merit in appellant's exception to the court's charge.

Appellant also raises the question as to the sufficiency of the evidence to support the conviction that the killing was done with malice aforethought. The prime defensive theory through the trial of this case was that when appellant came upon his wife and found her and deceased and another party present on the porch at the house where the dance was being held and saw the deceased with his arms around his wife, that this infuriated appellant, and, in connection with the previous information he had received to the effect that the deceased was trying to get his wife to go with him to Goodrich, that this conduct was such as to render the killing one without malice aforethought. The court gave a special requested charge in line with this testimony and told the jury, in effect, that, "If you believe from the evidence that the acts or conduct or language of the deceased, L. E. Henderson, or his acts and conduct and language coupled together towards the wife of the defendant just at and before the time the defendant shot and killed him, the said deceased, viewed from defendant's standpoint at the time, were of such a nature as to arouse in the mind of the defendant and did arouse in the mind of the defendant such a condition or feeling of anger, rage and resentment or either as to render his mind incapable of cool reflection, then and in such event the killing would not be upon malice aforethought." The evidence of the state's witnesses in this case, if true, was sufficient to establish the guilt of the appellant of a killing with malice aforethought. This court has never assumed the right to set aside a verdict because there might be evidence offered by appellant conflicting therewith. See Lockhart v. State, 3 Texas App., 567; Turner v. State, 37 Texas Crim. Rep., 451, 36 S. W., 87; Ray v. State, 84 Texas Crim. Rep., 262, 207 S. W., 990; Johnson v. State, 83 Texas Crim. Rep., 61, 200 S. W., 832.

Believing the evidence sufficient to support the verdict and no reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant testified that the witness Johnson told him shortly before the shooting that deceased was trying to get the wife of appellant to go with him to Goodrich where another party was in progress. From the statement of facts we observe that Johnson did not deny this; in fact gave no testimony on this point. Bill of exception No. 1, however, states that Johnson did deny making this statement. This error in the bill of exception must have arisen from the fact that Johnson did deny going into the room and telling Octavia Ryan to come out where deceased was. During argument a controversy arose between counsel for the state and the appellant over whether Johnson told the truth when he made such denial as is set out in said bill of exception. The proposition would become purely a moot question if witness made no such denial. There were other questions of contradiction between Johnson and other witnesses. The dare given to appellant's counsel to put on the witness stand a Mr. Brock "to show that Johnson did not tell the truth about it," was evidently the result of some kind of misunderstanding, mixed with a little heat of argument which the court properly settled by telling the jury not to pay any attention to it. Brock was not present at the killing, and knew nothing about whether Johnson was telling the truth or not, and at most could have but expressed his opinion, if he had one, as to Johnson's reputation for truth and veracity, which had not been attacked in any such way as to make admissible such testimony.

A review of the record leaves us still of opinion that no error was committed in the cross-examination of appellant's wife, and that the facts support the jury's conclusion that the killing was upon malice.

The motion for rehearing will be overruled.

*Overruled.*