# REPORTS

OF

# CASES ARGUED AND DETERMINED

## AT THE JANUARY TERM, 1868.

————◄◆►————

## HUGGINS *vs.* THE STATE.

‹ 41   391
,110   051
——————
41   393
131    17

[INDICTMENT FOR BUYING OR RECEIVING STOLEN PROPERTY.]

1. *Sufficiency of indictment in averring guilty knowledge.*—An averment that the defendants "feloniously bought or received two horses, of the value of one hundred dollars each, the personal property of S. W., which said horses had before then been feloniously taken and carried away, and they (the said defendants) well knowing that the said horses had been feloniously taken and carried away,"—shows with sufficient certainty that the defendants had knowledge of the larceny at the time they bought or received the horses.

2. *Defendant's declarations connected with prosecution, tending to show implied admission of guilt.*—Any conduct on the part of the defendant, in reference to the prosecution pending against him, which tends to authorize the implication of an admission of guilt by him, is competent evidence against him ; as where one of his bail suggested to him that he might risk a liability on his bond for six months longer, and possibly compromise it if necessary, and he replied, "Do as you see fit."

3. *Variance; charge tending to mislead jury.*—Under an indictment for buying or receiving stolen property, (Code, § § 3178, 3182 ; Revised Code, § 3710,) a conviction cannot be had on proof of concealing, or aiding in the concealment of the property ; yet the court may properly refuse to instruct the jury, at the instance of the defendant, "that although he may have concealed, or aided in the concealment of the property, knowing it to have been stolen, they cannot find him guilty as charged in the indictment," since such charge does not negative the buying or receiving.

4. *Buying or receiving stolen property ; constituents of offense.*—The offense of buying or receiving stolen property, knowing it to have been stolen,

26

(Code, § § 3178, 3182; Revised Code, § 3710,) may be consummated through the instrumentality of others, without seeing the property.

5. *Proof of venue.*—The appellate court will not pass on the sufficiency of the proof of venue in a criminal case, where no question was raised in the court below in reference to it.

FROM the Circuit Court of Dale.
Tried before the Hon. H. D. CLAYTON.

THE indictment in this case was found at the April term of said court, 1866, and charged that, before the finding thereof, "John Huggins and Columbus Huggins feloniously bought or received two horses, of the value of one hundred dollars each, the personal property of Samuel Watford, which said horses had before then been feloniously taken and carried away, and they (the said John Huggins and Columbus Huggins) well knowing that the said horses had been feloniously taken and carried away ; against the peace and dignity," &c. John Huggins was tried, alone, at the December term, 1867, and pleaded not guilty ; and on the trial he reserved the following bill of exceptions :

"The State introduced Samuel Watford as a witness, who testified, that on the night of the 3d January, 1866, two horses belonging to him, of the value of about two hundred and fifty dollars, were stolen from his lot in said county ; that one of said horses was ' pigeon-toed,' and the other had a very large foot, and one of them was old, and ' stemmed' his fodder ; that he found the tracks of the horses on the next morning, leading in the direction of Newton, Alabama ; that he followed the tracks to within five or six miles of Ozark, and could track them no further ; that he found, about nine days afterwards, in the woods, near the head of a branch within four or five hundred yards of the defendant's house, a tramping-place where horses had been tied and fed, and a beaten trail leading from it to the branch, and another trail leading in the direction of the defendant's house ; that one of the horses fed there ' stemmed' his fodder ; that the tracks of one of them, at the feeding-place, and along said trails, were ' pigeon-toed,' and the other's were very large, and that both were about the size of the tracks of his lost horses ; that he travelled

the path leading in the direction of the defendant's house but a short distance, and did not know whether or not it led as far as his house; that the horses appeared to have been ridden or led back and forth along said path; that while he was at the place that morning, he saw a man pass near by, going through the woods, in a direction down the branch, having a coat or blanket under his arm, and recognized him as the defendant. Said witness further testified, that one M. H. Daughtry, one of the defendant's bondsmen, upon a compromise of his forfeited bond as the defendant's surety, had given him a note in satisfaction for the loss of his horses. The State then introduced said Daughtry as a witness, who testified, that he became surety for the defendant's appearance after his commitment by a justice of the peace, and had a mortgage on the defendant's land to indemnify himself against liability on the bond' that a forfeiture was entered against the defendant and his bondsmen, at the spring term of said court, 1866; that some ten days before the fall term, 1866, he saw the defendant, who came to him in his plantation, and who had previously moved to Florida; that after talking about the bond, indictment, &c., the defendant went away, and said he would be back in a few days; that he returned a few days afterwards, and they renewed their conversation on the same subject; that he then told the defendant, 'he thought there was no immediate danger of a liability accruing upon the bond—that it might be risked six months longer, and, if it should become necessary, he thought it could be compromised'; and that the defendant replied,'Do as you see fit,' or words to that effect. The defendant moved the court to rule out all the evidence relative to the bond and the compromise thereof, and the note given to Watford by Daughtry in satisfaction for the horses lost; which motion the court overruled, and the defendant excepted.

"The State then introduced one Bracken as a witness, who testified, that the said tramping-ground was near the defendant's house; that there was but little difference between the distance from it to the defendant's house, and other houses in the vicinity; that he had stepped the dis-

tance between it and a road, which ran between it and the defendant's house, and found it to be one hundred and fifty-five paces, and the distance from said road to the defendant's house was two hundred and eighty-seven paces; that he saw at said tramping-place a small trough, in which horses had been fed, and, near by, evidences of two persons having lain in the straw; that he saw horses' tracks going in the direction of the defendant's house, along a sort of dull path which led towards the house, and that the tracks had been made since the fall of any rain. The State then introduced one Clark as a witness, who testified, that he saw the place, and that the appearances thereabouts were very much the same as those described by the other witnesses; also, that the defendant left the country some time after the commencement of this prosecution, and was not afterwards openly seen in the county; that, having afterwards ascertained that he was in the country, he (witness) notified the sheriff of the fact, and went with him, and assisted in arresting the defendant; that M. H. Daughtry lived at the defendant's late residence, where the defendant was seen the day before his arrest; that they went to arrest him in the night, and found him in a house; and that he thought, from the noise made in the house by the defendant, that he was trying to escape from the sheriff. J. L. Williams was then introduced by the State, and testified, that he was the sheriff of the county; that he went to the house of one Nathan Mims, on the notice given to him by said Clark, and there arrested the defendant near midnight; that the defendant tried to avoid arrest, by going first to the back door, but, finding some one there, came to the front door, where witness met and arrested him; and that the defendant said, after having been arrested, that he would have escaped if he could. One Windham, a witness for the defendant, testified, that he, with some others, at the defendant's request, examined the feeding-place, and saw the trail leading in the direction of the branch, and also saw a blind trail, resembling a pig's trail, leading in the direction of the defendant's house, but did not see any horses' tracks on said path; that from appearances, several days had elapsed since horses had been fed there; and that

they followed the trail in the direction of the defendant's house not more than thirty or forty yards.

" This being all the evidence in the case, the defendant asked the court to instruct the jury—1st, 'that unless they believed from the evidence, beyond all reasonable doubt, that the defendant bought or received the horses, knowing at the time that they were stolen, and that when he thus received or bought them, he did it with the intent thereby to defraud the owner of said horses, they must acquit'; and, 2d, ' that although the defendant may have concealed, or aided in the concealment of said horses, knowing them to have been stolen, they cannot find him guilty as charged in the indictment.' The court gave the first charge as asked, but refused to give the second; and charged the jury, ' that although the defendant may have concealed, or aided in the concealment of said horses, knowing them to have been stolen, they cannot find him guilty as charged in the indictment, unless they also find, from the evidence, that he bought or received the horses, knowing that they were stolen, and without the intent to restore them to the owner; and that the defendant may have received the horses, if he took the direction and control of them, although other persons may have been there with them. To the refusal to charge as asked, and to the charge given, the defendant excepted. The court then charged the jury, at the request of the solicitor, that the defendant may have received the horses without ever having seen them; to which charge, also, the defendant excepted."

RICE, SEMPLE & GOLDTHWAITE, for the defendant.

JNO. W. A. SANFORD, Attorney-General, contra.

A..J. WALKER, C. J.—The indictment alleges, that the persons charged feloniously bought or received two horses, "of the value of one hundred dollars each, the personal property of Samuel Watford, which said horses had before then been feloniously taken and carried away, and they (said John Huggins and Columbus Huggins) *well knowing that the said horses had been feloniously taken and carried away.*" It is objected to this indictment, that it

does not show a knowledge of the larceny at the time of the buying or receiving. We do not think this objection is well taken. The words " well knowing," &c., obviously refer to and qualify the previous allegation, that the defendants bought or received, and declare the existence of the knowledge at the time of such buying or receiving. Any other construction would do violence to the obvious meaning of the indictment.

2. The defendant made a comprehensive motion to rule out all the evidence relative to his bail-bond, and the compromise thereof, and a note given by the defendant's bail to Watford, in satisfaction for the horses lost. Certainly a part of this evidence was legal, and the court committed no reversible error in overruling the motion, notwithstanding the rest of the evidence may have been inadmissible. The evidence disclosed that a suggestion was made to the defendant, that the accruing of a liability upon the bail-bond might be risked for six months longer, and that, if necessary, it might be compromised ; and that the defendant replied to the suggestion, "Do as you see fit." The admissibility of this evidence is referrible to the doctrine, that the conduct of the accused, in reference to the prosecution, tending to authorize the implication of an admission, is competent evidence against him.—*Johnson v. State,* 17 Ala. 618 ; *Martin & Flinn v. The State,* 28 Ala. 71.

3. The court below refused to give the charge asked by the defendant, as follows : " Although the defendant may have concealed, or aided in the concealment of said horses, knowing them to have been stolen, they cannot find him guilty, as charged in the indictment." It is true that the defendant could not be convicted, in this case, for concealing, or aiding in the concealment of the stolen property ; yet it might be that the defendant concealed, or aided in the concealment of the property, and also received, or bought it, knowing it to be stolen. The defendant, therefore, was not entitled to the charge, that the defendant was not guilty, notwithstanding he may have concealed, or aided in the concealment of the stolen horses. The explanatory charge given by the court, of its own motion, was unobjectionable.

4. The charge given at the instance of the solicitor, to the effect that the defendant might commit the offense without seeing the property, was obviously correct. The defendant could certainly be guilty of committing the felony charged, through the instrumentality of others, without performing the act of receiving or buying in person, or actually seeing the property.

5. There was evidence in the court below reasonably conducing to prove the venue. We do not understand the decision in *Frank v. State*, (39 Ala. 670,) as going to the extent of holding that this court will pass upon the sufficiency of the evidence of venue, when no question was raised in the court below. That decision pertains to a case where it affirmatively appeared that there was no proof tending to show venue, and to such cases its authority and reasoning must be confined.

Affirmed.