HERMAN BLOCH v. THE STATE.

No. 4240.   Decided November 8, 1916.

Rehearing granted March 14, 1917.

**1.—Receiving Stolen Property—Indictment—Statutes Construed.**

Under article 1349, Penal Code, it is an offense to either receive or conceal stolen property knowing it to be stolen, and where the indictment alleged the receiving of stolen property, it was not necessary to allege that he unlawfully and fraudulently concealed the same, and there was no error in refusing to quash the indictment.  Following Thurman v. State, 37 Texas Crim. Rep., 646.

**2.—Same—Evidence—Bills of Exception.**

In the absence of bills of exception, alleged errors in admitting and rejecting testimony can not be reviewed on appeal.  Following Owen v. State, 4 Texas Crim. App., 153, and other cases.

**3.—Same—Circumstantial Evidence—Charge of Court—Corpus Delicti— Extra-judicial Verbal Confessions.**

Where, upon trial of receiving stolen property, the alleged extra-judicial verbal confessions that defendant knew that it was stolen, etc., was simply a circumstance and did not prove the corpus delicti or main fact of the theft, and was, therefore, simply circumstantial evidence, it required a charge thereon. Harper, Judge, and Prendergast, Judge, dissenting.

**4.—Same—Rule Stated—Compound Crime—Charge of Court.**

Wherever the case is of a compound nature, the rule applies both to the original case and to its derivative, and where the defendant was charged with receiving stolen property and made extra-judicial verbal confession, both the original and subsidiary offense must be proved, and a charge on circumstantial evidence is required in the absence of direct evidence of the main fact.

**5.—Same—Circumstantial Evidence—Confessions—Charge of Court.**

Where, upon trial of receiving stolen property, testimony of an extra-judicial verbal confession by the defendant was introduced in evidence, and he did not identify either the original theft, either by positive or circumstantial evidence, his declaration of receiving the stolen property could only be circumstantial evidence, and a charge thereon was required.   Following Kaufman v. State, 70 Texas Crim. Rep., 438.   Prendergast, Judge, dissenting.

**6.—Same—Rule Stated—Possession of Property Recently Stolen.**

The rule is that where the State relies upon the possession of recently stolen property to show guilt of defendant, it would be nothing more than a case of circumstantial evidence in the absence of direct evidence of the taking in a theft case.

**7.—Same—Confession—Circumstantial Evidence—Charge of Court—Rule Stated.**

To relieve the court from the necessity of charging on circumstantial evidence, the confession must be that defendant committed the act for which he is then on trial, or the admission must be unequivocal that the defendant did the main fact, and if it is only by a process of inference that it can be determined that there is a confession or admission of the main fact, it is error to fail to submit a charge on circumstantial evidence. Following Beason v. State, 43 Texas Crim. Rep., 442, and other cases.

**8.—Same—Rule Stated—Definition of Offense—Charge of Court.**

Although the proof shows that the defendant was present at the scene of the offense and he denies guilty participation, and there is no direct proof that he assisted in its commission, it is error to fail to charge on circumstantial evidence, and if defendant was present and participated in the theft, he was not a receiver and could not be convicted of receiving stolen property. Following Early v. State, 50 Texas Crim. Rep., 344.

**9.—Same—Rule Stated—Compound Offense—Principal—Receiver—Charge of Court.**

The rule seems clear that where there is a compound offense, theft and receiving stolen property, and conviction is sought for receiving stolen property, the theft must be proved with the same cogency as would the guilt of the defendant for receiving the stolen property, and if he was not present but was a conspirator to the transaction and was to receive the stolen property he would be a principal, not a receiver, and the knowledge of the fact of the theft of the property as a receiver thereof, while this could be shown by circumstantial evidence, a charge thereon was, nevertheless, required. Prendergast, Judge, dissenting.

**10.—Same—Misconduct of Jury—Affidavits—Motion for New Trial.**

Morrow, Judge, is inclined to the belief that the affidavits which were made a part of the motion for a new trial and which showed misconduct of the jury, and which are not shown to have been controverted by the State, are such as to require the granting of the motion for rehearing. Harper, Judge, and Prendergast, Judge, dissenting.

Appeal from the District Court of El Paso. Tried below before the Hon. W. D. Howe, Special Judge.

Appeal from a conviction of receiving stolen property knowing it to be stolen; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*P. E. Gardner, M. Scarborough, Hudspeth & Dale,* and *George E. Wallace,* for appellant.—On question of charge on circumstantial evidence: Hunt v. State, 7 Texas Crim. App., 212; Ross v. State, 9 id., 275; Ward v. State, 10 id., 507; Crowell v. State, 24 id., 404; Sullivan v. State, 18 id., 623; Hyden v. State, 31 Texas Crim. Rep., 401; Polanka v. State, 33 id., 634; Pace v. State, 41 id., 203; Jones v. State, 54 id., 37; Goode v. State, 56 Texas Crim. Rep., 418, 120 S. W. Rep., 199; Rix v. State, 33 Texas Crim. Rep., 353; Carlisle v. State, 31 id., 537; Collins and Lindley v. State, 24 Texas Crim. App., 141; Crook v. State, 27 id., 198; Wyvias v. State, 64 Texas Crim. Rep., 236, 142 S. W. Rep., 585; Shockley v. State, 71 Texas Crim. Rep., 475, 160 S. W. Rep., 452; Nichols v. State, 39 Texas Crim. Rep., 80, 44 S. W.

Rep., 1091; Lassater v. State, 39 Texas Crim. Rep., 532; Hanks v. State, 56 S. W. Rep., 922; Dysart v. State, 46 Texas Crim. Rep., 52, 79 S. W. Rep., 534.

On question of misconduct of jury: Hogan v. State, 28 S. W. Rep., 949; Tuller v. State, 58 Texas Crim. Rep., 551, 126 S. W. Rep., 1158; Barr v. State, 62 Texas Crim. Rep., 58, 136 S. W. Rep., 454; King v. State, 59 Texas Crim. Rep., 511, 129 S. W. Rep., 626; Jones v. State, 72 Texas Crim. Rep., 496, 163 S. W. Rep., 75; Terry v. State, 38 S. W. Rep., 986; Mitchell v. State, 36 Texas Crim. Rep., 278, 36 S. W. Rep., 456; Hardeman v. State, 53 S. W. Rep., 121; Henderson v. State, 37 Texas Crim. Rep., 79; Drake v. State, 29 Texas Crim. App., 265; Suit v. State, 30 id., 319; Hess v. State, 30 id., 477; Bell v. State, 31 Texas Crim. Rep., 521; Sanders v. State, 60 id., 341; Jones v. State, 173 S. W. Rep., 75; Harris v. State, 76 Texas Crim. Rep., 155, 172 S. W. Rep., 1146; Solis v. State, 76 Texas Crim. Rep., 230, 174 S. W. Rep., 343; Johnson v. State, 71 Texas Crim. Rep., 391.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of circumstantial evidence, accomplice, etc.: Wampler v. State, 28 Texas Crim. App., 352; Thompson v. State, 33 Texas Crim. Rep., 217; Kidwell v. State, 35 id., 264; McKinney v. State, 48 id., 402; Tune v. State, 49 id., 445; Perry v. State, 69 Texas Crim. Rep., 644, 155 S. W. Rep., 263; Johnson v. State, 72 Texas Crim. Rep., 387, 162 S. W. Rep., 512.

On question of misconduct of jury and statement of facts: Bailey v. State, 65 Texas Crim. Rep., 1, 144 S. W. Rep., 996; Treadway v. State, 65 Texas Crim. Rep., 308, 144 S. W. Rep., 655; Kinney v. State, 67 Texas Crim. Rep., 175, 148 S. W. Rep., 783; Brewer v. State, 163 S. W. Rep., 622; Lucas v. State, 165 S. W. Rep., 527; Robbins v. State, 70 Texas Crim. Rep., 52, 155 S. W. Rep., 936; Ethridge v. State, 74 Texas Crim. Rep., 635, 169 S. W. Rep., 1152; Merkel v. State, 75 Texas Crim. Rep., 551, 171 S. W. Rep., 738; Dodson v. State, 76 Texas Crim. Rep., 439, 174 S. W. Rep., 1048.

HARPER, JUDGE.—Appellant was convicted of receiving stolen property, knowing it to be stolen, and his punishment assessed at two years confinement in the State penitentiary.

Appellant sought to quash the indictment on the ground that it did not allege appellant "unlawfully and fraudulently concealed the property," as well as alleging that he unlawfully and fraudulently received it, knowing it to be stolen. Article 1349 makes it an offense to either receive or conceal stolen property, knowing it to be stolen. It is not necessary to do both to be guilty of an offense, but the doing of either is a violation of the law. Thurman v. State, 37 Texas Crim. Rep., 646. The court committed no error in refusing to quash the indictment on the grounds named in the motion.

The motion for a new trial alleges many grounds as error in admit-

ting and rejecting testimony, but no bills of exception appear in the record in regard to such rulings, therefore the questions are not presented in a way we are authorized to review them. (Owen v. State, 4 Texas Crim. App., 153; Smith v. State, 34 Texas Crim. Rep., 123; Janca v. State, 56 Texas Crim. Rep., 100, and cases cited on page 132, Branch's Annotated Penal Code.)

There are but two bills of exception in the record, the first presenting the question that the court erred in failing to charge on circumstantial evidence, and erred in refusing to give appellant's special charge on that issue. This is not a case depending on circumstantial evidence. The stolen property is positively identified by several witnesses; its receipt by appellant is shown by positive evidence, Louis Cohn swearing to that fact, and then the State proves several admissions of defendant, in one instance Mr. Goodwin swearing appellant said, "I knew at the time I bargained for it and knew when I paid for it, it was stolen off the train." Wampler v. State, 28 Texas Crim. App., 352; Whitehead v. State, 49 Texas Crim. Rep., 123, and cases cited in section 203, Branch's Crim. Law.

The only other bill in the record relates to the action of the court in overruling his motion for a new trial. One ground of the motion alleges the misconduct of the jury. To properly present this question for review a bill of exceptions should have been reserved, and in this bill should be incorporated the testimony heard on this ground of the motion, and it should have been filed in term time. The term of court at which appellant was tried adjourned June 24, 1916. The bill in the record (which includes no testimony heard) was not presented to the court for approval until September 7th,—some forty days after adjournment of the court. There is with the record a separate paper which is termed "supplemental statement of facts, on motion for new trial," filed on September 8, 1916, in the trial court—long after court had adjourned for the term. In Black v. State, 41 Texas Crim. Rep., 185, this question was thoroughly discussed, and it was there held: "These matters must be made part of the record during the term of court. There is no statute authorizing such matters to be perpetuated in papers filed subsequent to the term." In that case the motion for a new trial alleged misconduct of the jury, as in this, and the court refused to consider the ground because the evidence heard thereon was filed after term time. The rule announced in that case has been followed in an unbroken line of decisions.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 14, 1917.

DAVIDSON, PRESIDING JUDGE.—Appellant contends that the affirmance was in contravention of the law and the facts, and asks for a

rehearing and reversal of the judgment. Without the details, the evidence discloses that a smelting company at El Paso loaded a certain numbered car with copper for interstate shipment; that the car was properly sealed, and started to its place of destination. Having reached a point about twenty-five miles from El Paso, the train was stopped by the conductor on account of a fire in some part of the machinery. He states the fire was not accidental. Where the train was stopped the conductor testified that he saw three or four men near the train, which indicated to him they had gotten off the train. He accosted them and a conversation occurred in English. He did not know them, or whether they were Mexicans or Americans, and was not able to identify any of them, it being at night. They did not go in the train from that point. At another point considerably north of that above indicated it was discovered that the seal of the car had been broken and some of the copper taken or had disappeared from the car. The train left El Paso in the evening about 7 or 8 o'clock. Copper bars were found between El Paso and the line of New Mexico near the railroad track, and it is made reasonably to appear that some of it had been thrown from the train while in motion within eight or ten miles of the city of El Paso. Copper above that point was also picked up by the railroad people. There were indications that something had been thrown from the train which the circumstances indicated might be the missing bars of copper. There were tracks of men found at this place and the inference is they had carried the copper in a vehicle which made a narrow wheel track. The State contends that the next morning at a very early hour appellant told his clerk that he had three bars of copper at one of his warehouses where he lived, and there would be other bars brought to the warehouse, which was controlled by the clerk. Six bars of copper, Cohn says, were brought to him early the same morning by two Mexicans in buggies drawn by jackasses or mules. This copper later was put in barrels to be shipped, and the bill of lading taken in the name of appellant. It would seem, however, that appellant did not but Cohn did attend to this shipment. When the copper was carried to the depot for shipment an investigation was made and the smelting company claimed the copper. It being in the name of appellant, he was sent for, and it is stated he admitted buying the copper. So far as any positive facts may be concerned, it seems appellant was not seen in actual possession of the property. There seems to have been another trial of the case, and while the jury was out on that trial witness Goodwin testified that in conversation between appellant, himself and attorney Hill, appellant admitted he knew the copper was stolen when he bought it, and that it "came off the train." This is denied by appellant and Hill both, and their version of it is entirely at variance in every way with the testimony of Goodwin. The writer deems it unnecessary to enter into a detailed statement of the facts and circumstances. .

If appellant made the statement imputed by Goodwin, that he

"knew" the property was stolen and that it came "off the train," it would be an extra-judicial verbal confession. It does not prove the theft of the property. Hill v. State, 11 Texas Crim. App., 132. It is an admission, if made, that he knew it was stolen and came "off the train." This can only be regarded as a circumstance. It does not prove the corpus delicti, the theft, or the main fact. Extra-judicial verbal confessions do not prove the corpus delicti. . This was held in an able opinion by Judge Hurt in Hill v. State, 11 Texas Crim. App., 132. The theft relied on by the State must be proved, the identity of the property established, and the theft must be shown aliunde such confession. This would not make a case of positive evidence. The authorities may be found collated by Mr. Branch in his valuable work on Criminal Law, page 106. A serious proposition in the case is this: that a charge on circumstantial evidence should have been given. Wherever the facts are circumstantial such charge is necessary, and to relieve the court from giving this charge the evidenre must be positive. This rule, wherever the case is of a compound nature, applies both to the original case and to its derivatives as in homicide the indicted accomplice must have a principal. Such confession of the accomplice does not prove guilt of the principal; nor in a case where we have a principal and accessory, or a principal and a receiver. We are referring to extra-judicial verbal confessions. Such cases may be termed compound offenses, made up of the original and the related subsidiary offense, both of which must be proved. The authorities all seem clear upon this proposition, and are collated by Mr. Branch in the citation above noticed. The correct general statement is that every such case has its main fact to be proved—the factum probandum—in theft, the taking; in murder, the fatal stroke; in forgery, the making of the forged instrument; in burglary, the breaking and. entry, etc., and if there is no direct evidence of the main fact, a charge on circumstantial evidence is required. If the main fact is inferred from other facts, the case rests wholly upon circumstantial evidence, in a legal sense. Sec. 202 of Mr. Branch's Crim. Law. Under that citation is collated a great number of cases, rather numerous to be here specified.

Now, in this particular case there is no direct evidence as to the theft. It is one of inference, and the principal is not shown by positive evidence. The circumstances go to show that somebody entered the car by breaking the seal, though whoever did it resealed the car, but not with the same kind of character of seal. Where this occurred is not shown except by inference. It occurred after sealing the car at El Paso and before reaching point of discovery, and possibly before the copper was thrown from the train near El Paso. The train seems to have been in rapid motion from the time it left the depot at El Paso until it reached the point indicated heretofore in this opinion, where the fire was discovered. Just how the parties breaking into the car could have broken the seals, the seals being on the outside of the car, while it was running at about thirty-five miles an hour and then replace

the seals, is not explained or sought to be explained.  When, where, and by whom the car was resealed is not disclosed, nor sought to be. So it is left as a matter of conjecture as to how, when and where the seals were broken and others substituted.  But the testimony is that the car had been sealed in El Paso, and that when it reached a point in New Mexico, something over one hundred miles above El Paso, the seals had been broken and replaced by others, and the copper had been thrown from the train.  Who threw it from the train, or how they entered the car, or where or when are but matters of inference.  Whether it was the men the conductor says he saw who did it is conjectural. The conductor suspected they did it by reason of seeing them at the place designated, that is, where the train stopped.  He did not see them on or get off the train.  This is but a circumstance pointing to them as those who may have broken the car.  It may or may not have been.  It may have been broken by others prior to that time.  The parties breaking the seals may have had confederates who later replaced them.  Their connection with the burglary of the car is only a matter of inference or deduction.  The seals may have been broken at El Paso, and the seals replaced beyond the place of theft.  The fire may have been started at El Paso in order to stop the train near by El Paso. These facts clearly raise the question of design and conspiracy planned and executed with well matured preparedness.  If defendant was a part of this conspiracy he would be a principal.

Now, recurring, if the defendant made the statement to Goodwin, to which Goodwin testifies, that he bought the property knowing it to have been stolen, it was in the face of defendant's evidence, as well as a positive denial of the statement by himself and Hill, for he testified and introduced testimony to the effect that he bought the copper innocently, not knowing it was stolen; but take the statement of Goodwin for what it is worth, that appellant knew it was stolen and knew it came *"off the train,"* and the further statement of the accomplice Cohn, that appellant said he was in possession of copper very early the next morning, which the State contends were three of the bars that came out of the particular train, and that he instructed Cohn to receive copper from other parties, and that Cohn did receive copper a few minutes later from a couple of Mexicans in two buggies, it still would be but a case of circumstantial evidence.  This statement, if intended to operate as a confession against appellant, was extra-judicial.  He did not identify either the theft or stolen property, or circumstances of the theft, or receiving the property taken.  If connected as a taker he would not be a receiver, though he was not present.  Kaufman v. State, 70 Texas Crim. Rep., 438.  There was no identification of the copper as having been taken off of that train by the confession.  All those matters had to be shown by circumstances.  This would be but a case of possession of recently stolen property, if possession is proved to be in appellant.  We have always understood the law to be that where the State relies upon possession of recently stolen property to

show guilt, it could be nothing more than a case of circumstantial evidence. Mr. Branch, in the same section above alluded to, thus correctly states the rule: "Proof of recent possession in theft or burglary cases is but a circumstance, and if there is no direct evidence of the taking in a theft case, or of the breaking and entry in a burglary case, the court should charge on circumstantial evidence," and in support of this he cites a great number of cases which can be found collated in the reference made. Now he makes this further note with reference to confession: "To relieve the court from the necessity of charging on circumstantial evidence the confession must be that defendant committed the act for which he is then on trial, or the admission must be unequivocal that defendant did the main fact, and if it is only by a process of inference that it can be determined that there is a confession or admission of the main fact, it is error to fail to charge on circumstantial evidence." A great number of cases are cited in support of this. We might mention Beason v. State, 43 Texas Crim. Rep., 442; Crowell v. State, 24 Texas Crim. App., 404; Pace v. State, 41 Texas Crim. Rep., 203; Gentry v. State, 41 Texas Crim. Rep., 497; Trejo v. State, 45 Texas Crim. Rep., 127; Willard v. State, 26 Texas Crim. App., 126; Conner v. State, 17 Texas Crim. App., 1; Harris v. State, 15 Texas Crim. App., 629. In Early v. State, 50 Texas Crim. Rep., 344, it was stated, substantially, that though proof shows that defendant was present at the scene of the homicide, but he denies guilty participation, and there is no direct proof that he assisted in its commission, it is error to fail to charge on circumstantial evidence. Was appellant present and participated in the theft? If so, he was not a receiver and could not be. In that case he would be the thief. He could still be a principal under the conspiracy theory if the facts and circumstances so showed. This could be shown by positive or circumstantial evidence. In the latter case the requisite charge must be given.

Take the statement made by appellant at its value, the conclusion that appellant was or was not present at the time of the taking, or that he received the property knowing it came from the train sought to be shown by the State to have been burglarized, would constitute but a case of circumstantial evidence. The guilt of the accused would then have to be inferred from these and other circumstances. This is not direct or positive evidence on either issue. If we take his statement, that he knew the property was stolen and "came off the train" as true, it does not specify what train. This is a matter of inference from other circumstances. It is as strong evidence also that he may have been one of the four men mentioned by the conductor. It is as strong that he was a conspirator and so received the property in pursuance to the conspiracy as that he was a receiver without previous conspiracy. If a conspirator, not present at burglary or theft, but was to receive the stolen property under the conspiracy, he would be a principal, and his absence would not relieve from being such principal. Kaufman v. State. 70 Texas Crim. Rep., 438. The State shows. under the evidence

of the accomplice, that early the next morning appellant told him he had received some copper, and later the same morning received through Cohn other bars of copper, and to Goodwin he states he was aware the copper was stolen. This does not prove the corpus delicti; it does not show positively the identity of the property. It was necessary to show all this by such circumstances as the State could produce. From the beginning of the case to its end the State sought to connect defendant with receiving the property by circumstances. The whole case was one of circumstances. In the Beason case, 43 Texas Crim. Rep., 442, the question came in somewhat similar form, except the confession was judicial and not extra-judicial. A house had been burglarized, and Beason and another party were arrested charged with the burglary and theft. The theft being a misdemeanor, was tried in the county court. Defendant plead guilty in the county court to the theft of the property. The trial court submitted the burglary to the jury upon the theory that it was a case of positive evidence by reason of the confession. This court, in the first opinion, reversed because a charge on circumstantial evidence was not given, and on the second appeal, in rather an elaborate and well considered opinion written by Judge Brooks, the rule was followed. A great number of cases might be cited in support of this proposition, and so far as the writer is aware it has not been varied or modified. If appellant had been charged with the theft of the property from the train, the circumstances would have been just as strong against him as for the receiving. The State relied upon possession of recently stolen property to show its reception. It had to prove the principal offense circumstantially, and by circumstantial evidence to connect him with knowledge of its being stolen. Had he been tried for theft of the property from the train, the possession would have been recent, whether explained or unexplained. This would make no difference from that point, because in either case it would have been a case of circumstantial evidence, and if the State is correct in its theory that he was in possession of the property early the next morning, by 7 or 8 o'clock, and the property had been hauled eight or ten miles and brought to his warehouse at that early hour after being thrown from the train the previous night, it was but possession of recently stolen property if it had been identified as property coming from the train. Who brought the copper to defendant, or did he bring it? The Mexicans brought that to Cohn. The rule seems clear that where there is a compound offense, theft and receiving stolen property, and conviction is sought for receiving stolen property, the theft must be proved with the same cogency as would the guilt of the defendant for receiving the stolen property. If he was not present but was a conspirator to the transaction and was to receive the stolen property, he would be a principal—not a receiver. Kaufman v. State, 70 Texas Crim. Rep., 438. Appellant could not be the receiver of stolen property without knowledge of the fact that theft of it had been committed. It is true this could be shown by circumstantial evidence as well as by

positive, but where circumstances are relied upon, a charge on circumstantial evidence is necessary, and this would be so if either the receiving stolen property, or the theft side of the case is shown by circumstantial evidence. This seems to be the well settled rule with reference to all compound offenses. It is also settled that where the party is charged with being an accessory, the guilt of the principal must be proved, and this with about the same cogency of testimony as requisite to convict the principal were he on trial. So where a party is charged with being an accomplice, the guilt of the principal must be shown in order to connect the accomplice with the offense, because there could be no accomplice without a principal. In other words, that in order to show the guilt of the accessory, the receiver of stolen property or the accomplice, both offenses, the original and its subsidiary offense, must be shown in order to convict. In a case of this character there must be shown to be a theft first, and, second, that the accused did receive or conceal the alleged stolen property as charged in the indictment, and, third, that he knew it was stolen at the time he received it. A failure to prove either of these necessary ingredients would cause the State to fail in making out its case. If either the theft or the receiving of stolen property is shown only by circumstances, it is a case of circumstantial evidence, and such charge should be given. If he was a principal, as under the Kaufman case, he would not be a receiver.

This case, under the facts as shown in this record, is one of circumstantial evidence, and the court was in error in not so charging the jury.

There are other interesting questions in the case which the writer believes ought to reverse it, but they are not discussed.

The motion for rehearing is granted, the affirmance is set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*

MORROW, Judge (concurring).—I concur in the reversal. I am inclined to the belief that the affidavits which were made a part of the motion for a new trial, and which showed misconduct of the jury, and which are not shown to have been controverted by the State, are such as to require the granting of the motion for rehearing.

PRENDERGAST, Judge (dissenting).—This case was affirmed by the whole court as then constituted without any dissent, as shown by the original opinion. For the first time, in his supplemental motion for rehearing, appellant contends the evidence was insufficient to show his guilt. In considering this question, it is important to bear in mind the charge against him. The indictment was preferred under article 1349, P. C., which is: "If any person shall receive or conceal property which has been acquired by another in such manner as that the acquisition comes within the meaning of the term theft, knowing the same to have been so acquired, he shall be punished in the same manner as if he had stolen the property," and strictly conformed thereto

and with the approved form therefor.  It alleged that he unlawfully and fraudulently received from some person to the grand jurors unknown, 3000 pounds of copper bullion, the property of O. L. Snell, of the value of $350, which had theretofore been acquired by some person to the grand jurors unknown, in such manner as that the acquisition thereof comes within the meaning of the term theft; and that he received it knowing the same to have been so acquired.  Or, more tersely stated, that he received said stolen copper knowing it to be stolen.

The indictment did not charge him with the *theft* of the property; nor that he was an *accomplice to the theft* thereof.  He could not have been convicted for either of those offenses under the indictment herein. Nor was he so convicted, nor attempted to be.  He could have been convicted for receiving said stolen copper knowing it to be stolen, and for no other offense, and was convicted of that offense only.

Most of the material facts were clearly established by uncontroverted positive testimony.  If any material fact was disputed or controverted, it was established by a preponderance of the evidence, and mostly by positive testimony, and amply so.  The substance of the testimony will here be given.

The positive, undisputed testimony established that the El Paso Smelting Works was a company located, and doing the business of smelting copper ore at El Paso, in August, 1915, and prior thereto; that it smelted and molded it in the form of bars of bullion.  These bars averaged about 300 pounds to the bar.  On August 3rd or 4th, said smelting company loaded into a certain railroad car nine of its bars, with others, in a shipment to New York.  Both the smelting and railroad company's agents at the time inspected and counted the bars therein.  Both company's agents then sealed up all the doors of that car and put the seals of their respective companies on every door.  That car was then turned over to the conductor, and he and his crew inspected and saw that the car was closed and doors sealed, as stated, and at night he started with it in a train to its destination.  Some miles out of El Paso, in that county, someone, wholly unknown and who could not be identified, broke both seals of one door, opened the car and that night threw out of it onto the ground while the train was running, said nine bars, and others.  No one testified to seeing the person or persons actually take and throw off the bars at the time.  When approaching a station, the conductor discovered the waste in the journal box of this car afire, and stopped his train and put out the fire.  The waste had been set afire—it did not catch from a hot box.  When he stopped, he saw three or four unknown men get off of his train.  They were strangers, and he did not know, and could not identify them.  He did not then learn said car had been broken into, but at his next stop he saw both seals had been broken on one door.  He and the railroad agent at that station then entered the car, counted the bars therein and found that forty had been taken therefrom, after he left with it in his train from El Paso.  These facts were communicated to the railroad

and smelting companies at once, and the next morning they sent out from El Paso persons to see if they could find said copper. The persons sent went out on the railway track and found, a few miles out of El Paso, where these nine bars, and others, had been thrown from the train while running by the indentations made in the ground where they struck, and they were scattered along a considerable distance. Further on they found and recovered other bars. They also at the points where these nine bars had been thrown off and struck the ground, saw the tracks of vehicles, one drawn by two animals with small feet. At these places they found the tracks of men, showing where they had picked up these nine bars, carried them to the vehicles, and evidently placed them therein. They then tracked these vehicles back towards El Paso. These nine stolen bars were found and completely and thoroughly identified the next day when appellant had had them put in three barrels and sent to the depot of another one of the railroads to himself ship them off. The positive testimony of other witnesses, and that of appellant himself, too, was that he claimed these nine stolen bars at the time, and that they were in his possession, he attempting to have them shipped at the time the railroad and smelting companies' agents found, and recovered possession of, them from him. They were thoroughly and completely identified by positive testimony as the said nine bars which had been so stolen.

The positive testimony, without controversy, and by appellant himself as well as of others, established that he, at this time, had his headquarters and place of business at his residence, 305 East Boulevard, in El Paso, and there had a warehouse. It was at this place, his home, where he and his clerk, Louis Cohn, for him held out and transacted his business. At that time he also had another warehouse at 1022 Arizona Street, in El Paso. His said clerk, Louis Cohn, testified that on the early morning of August 6th, when he went down to appellant's home and place of business to go to work for appellant as usual, appellant himself was there at his residence and told him he had three bars of copper bullion in said warehouse at his said home and directed him to meet some Mexicans at the Dieu Hospital on Arizona and Stanton Streets; "he said there would be two wagons there with copper bullion and to take them over to 1022 Arizona Street, where he had the other warehouse." That in compliance with appellant's instructions, he went and found the Mexicans waiting for him at the place appellant had designated with two conveyances. That to one of the conveyances were two little Mexican burros, and in this wagon there were three bars of copper bullion, "all covered up with brush and small timber, or wood on top of it." That in the buggy there were three bars, and it was all covered up with a rug on top of it. That as directed and required by appellant, he showed said Mexicans in charge of said vehicles the way to appellant's warehouse on Arizona Street, and that they, said Mexicans, unloaded the said six bars of bullion in appellant's said warehouse. That he then went back to appellant's and

told him the six bars were there. That these Mexicans also then went back to appellant's said home. They undoubtedly went back there at the time to get their pay for the said stolen copper, and then got it from appellant. Said witness further testified that those three bars at appellant's residence were delivered there on the same morning the other six were delivered, as stated, in appellant's other warehouse. He further testified as to said three bars: "I found the bars at his residence in the morning when I got to work." That the next day appellant told him to ship out all of said nine bars of copper, the three at his residence and the other six at his Arizona Street warehouse, and that under his then instructions he had a transfer wagon to haul said three bars from appellant's residence to his Arizona Street warehouse, where he then had said nine bars put in three barrels, three bars in each barrel, closed them up and sent them to the depot of one of the railroads to ship them away under appellant's instructions. That appellant told him to scratch out certain identification marks on said bars, which he tried to do.

Ben West, a special detective officer for one of the railroads, testified that on the morning said bars were attempted to be so shipped out, and before he had located any of them, he went and watched appellant's residence to see if he could locate any of said stolen copper; that while there watching, he saw the said transfer wagon come to appellant's back gate in the alley, and from there he saw said transfer wagon and Cohn go to appellant's Arizona Street warehouse. On the way they picked up three barrels. He then watched that warehouse and saw three barrels being hauled therefrom. He followed, and arrived at the depot just as the barrels were unloaded on the platform, and had one of them opened, and found therein three of said stolen bars, which were completely identified as three of the stolen bars. The smelter authorities then procured at that time all nine of said stolen bars in said three barrels, by search warrant proceedings, and they were thoroughly identified as nine of the bars stolen off of said train, as stated. Mr. West further testified that when he was up at Bloch's house on said occasion watching, he was looking for stolen copper; that he saw appellant come to the gate out to said express wagon in company with said Cohn and saw him at the time giving Cohn instructions where to go. When the said bars were stopped at the depot, Cohn sought and found appellant and told him of the seizure thereof. Appellant at once went to the depot, and he and other witnesses also positively testified he claimed all nine of said bars as his property, and stated that he had bought them.

Mr. Cohn further testified that he was present when the transfer wagon came to appellant's to haul said three bars from his house to appellant's Arizona Street warehouse and did so haul them. This was the same time that said West saw what he did and testified thereto. Cohn further testified that he knew that said transaction about said nine bars was dishonest and that they were engaged in a dishonest

transaction. "I knew that that stuff was stolen. I knew at the time
I took it down to the warehouse that it was stolen; as to how I knew it
was stolen, I knew because there is nobody sells anything like that
unless it is stolen, and he (appellant) told me when it came in. . . ."

John Goodwin testified positively that just after the previous trial,
while the jury were out, appellant, Morales and himself were talking
about the case when Mr. Hill, his attorney, came to where they were
and asked: "How can you people tell that this bullion was stolen off
this train?" And that appellant then said: "You need not explain
to me. *I knew at the time I bargained for it it was stolen off the train.
I knew when I paid for it it was stolen off the train.*" Mr. Goodwin,
on cross-examination, when he was asked by Mr. Hill if he was not
"joshing" with him, swore: "He (appellant) did not say that joshing.
He was just as earnest as he ever said anything in his life. . . . We
were talking as earnest as we could." He then reiterated positively and
unequivocally his testimony of what appellant said to him as quoted
above. Angel Morales testified substantially the same thing as to the
said statement or admission by appellant. He swore: "He (appel-
lant) said at that time he knew it was stolen from that car." Mr.
Jones testified that he heard appellant make a statement in regard to
said copper. "He made a statement down there to the effect that he
had bought this copper." This occurred at the Justice Court in some
proceeding about the copper. Again, on direct examination, he swore
that down in the Justice Court appellant claimed that copper as his.
"He told me he had bought it and was entitled to it." It is true that
appellant denied making said statement to Goodwin, but he did swear
that the said several parties were together on that occasion and did
discuss the matter at said time, and Mr. Hill claimed that they were
"joshing" with Goodwin about it, and Mr. Hill swore: "And I made
the remark, I said, 'Well'—something to this effect—I don't remember
exactly—'If I were you I never would buy another piece of copper;'"
that he said that to appellant. "And I said something else with ref-
erence to the case, and Mr. Goodwin made some remark, and Mr. Bloch
made the remark: 'Why don't you people watch your copper and catch
the thief?' or something to that effect, 'and not jump on us fellows
because we happen to get hold of it,' something to that effect; there
was several words said there, but I never heard at any time Bloch say
that he knew that the copper was stolen or that he knew it was; I was
right there during the conversation." This testimony by Mr. Hill was
of a negative kind. He did not swear that appellant did not make the
statement to which Goodwin testified, but, as shown, that he never
heard it. Neither Goodwin, Morales nor Jones were in any way im-
peached, and even though appellant denied making the statement to
Goodwin and Morales, and Mr. Hill in a measure bore him out in a
negative kind of way, still that was a question of fact for the jury.
He did not dispute nor deny Jones' testimony. The jury unquestion-

ably had the right to believe, and doubtless did believe, Goodwin, Morales and Jones and did not believe appellant nor his attorney.

All this positive testimony amply and clearly showed that appellant himself personally received all this stolen copper. It shows, without doubt, that he personally received three bars of it at his residence before Cohn reached there that morning; that he then staked out the Mexicans with the other six bars of it, having at the time received it, and was merely awaiting the arrival of Cohn, his clerk, so as to direct and require him to go and show these Mexicans his warehouse and have them to put those six bars in that warehouse for him, so as to himself avoid going, which they did. Cohn did not receive it; Cohn did not buy it; Cohn did not pay for it; and Cohn never claimed it. Cohn had no interest in it at any time. Appellant himself personally bought it, received it and paid for it, and claimed it, and it was in his possession. All that Cohn did was to obey his instructions to have the Mexicans put the six bars in his, appellant's, warehouse. Hence, appellant's contention that there was no evidence showing that he received said stolen property knowing it to be stolen, not only can not be sustained, but the reverse is clearly shown by positive testimony. The whole testimony was without doubt ample to show his guilt.

But, notwithstanding all this positive testimony, clearly showing, as it did, that appellant himself received said stolen copper knowing it to be stolen, he still contends that he physically and manually did not receive it, etc., but that Cohn, his clerk, did. There is no contention or evidence whatever that Cohn himself, for himself and not for appellant, bought said copper or paid for it, or received or handled it, or undertook to ship it. It is shown by all testimony from all sources and witnesses, that all and everything Cohn did about said copper was done by him as the clerk and agent of appellant, and under his instructions and direction, and not otherwise. Then what is the law applicable thereto?

Upon the most complete and exhaustive examination of the authorities, this identical question was decided by this court against appellant in Kaufman v. State, 70 Texas Crim. Rep., 438. In that case the question was briefed and argued most elaborately and vigorously by able, experienced and eminent attorneys. It was shown that appellant therein was not personally present when the stolen property was placed in his barn for him under his direction, and that, as a matter of fact, he never had his hands on it, and was not present when it was delivered in his barn for him, and that he never otherwise physically received or handled it, but, on the contrary, that he was not at that place at the time it was physically delivered at his barn, nor for some hours before nor after, but some miles distant therefrom. In that case the appellant attacked the charge of the court to the effect that if the property was delivered in his barn or premises, owned and under his control and management, at his direction, then this would constitute the receiving of said property by him, and the court expressly refused to charge on

alibi in his favor. Appellant in that case properly and completely raised both questions. This court, in a unanimous opinion, said:

"Mr. Bishop, in his New Criminal Law, volume 2, section 1139, in treating of the act of receiving stolen goods, says: 'The leading doctrine here is that the goods must come under the control of the receiver; yet the control need not be manual. For instance,—if they are in the hands of a person whom he can command in respect of them, they may be deemed to have been received. And one who allowed a trunk of stolen goods to be sent on board a vessel in which he had taken passage, was held to have received them.'

"In 34 Cys., page 517, in treating of the receiving, it is said: 'To be convicted of receiving stolen goods, defendant must have had such control of the property as amounts to constructive possession, at least; but the possession need not be actual and corporeal. It may be through the instrumentality of another person, and the offender need not have seen the goods.'

"In Huggins v. State, 41 Ala., 393, which was a conviction for receiving stolen property, it is held:

" 'The charge given at the instance of the solicitor, to the effect that the defendant might commit the offense without seeing the property, was obviously correct. The defendant could certainly be guilty of committing the felony charged, through the instrumentality of others, without performing the act of receiving or buying in person, or actually seeing the property.'

"In the case of State v. Stroud, 95 N. C., 626, it is held: 'The court charged, in substance, that if the meat after being stolen was directed by the defendant to be carried to a certain place, he at the time knowing that it had been stolen, it was a receiving in the eye of the law. To constitute the criminal offense of *receiving,* it is not necessary that the goods should be traced to the actual personal possession of the person charged with receiving. It would certainly make him a *receiver* in contemplation of law, if the stolen property was received by his servant or agent, acting under his directions, he knowing at the time of giving the orders that it was stolen, for *qui facit alium facit per se.* It is the same as if he had done it himself.'

"We are clearly of the opinion that the evidence in this case justified the jury to believe that appellant knew that these goods were stolen by Howard and his associates and that he directed that they should be delivered to him by placing them in his barn, which was done. This 'was a receiving by him in the eye of the law.' It was not necessary under the law that he should personally be present, nor manually receive the property under the circumstances of this case. The charge of the court above complained of was correct and no charge on alibi should have been given." Said case was approved in Pendley v. State, 71 Texas Crim. Rep., 281.

So that whether appellant received said stolen copper physically and manually, or Cohn, his clerk and agent, did so for him, makes no

difference. He was properly convicted in either event. And it would make no difference whatever whether Cohn was a principal with him or not. However, the question of principal, vel non, was not raised in the lower court in any way. The court did not charge the law of principals and should not have done so. No objection whatever was made to his charge because he did not do so, nor was any charge thereon asked by appellant, nor suggested, nor intimated, in the court below. No such charge should have been given; but, if so, it is too late to now complain thereof under the plain provisions of the statute, and all the decisions.

Of course, under the indictment, appellant could not have been convicted as an accomplice of Cohn, nor was he sought to be. The court submitted no such issue, nor the law applicable thereto, nor did appellant in any way complain of the charge on that account, nor ask any charge on the subject. The court did charge that Cohn, as a witness, was an accomplice and had to be corroborated. His charge on this subject was full and complete, in strict conformity with the statute and decisions, and in no way complained of by appellant in the court below.

The only other material question is whether the court erred in not charging the law of circumstantial evidence.

In considering and discussing that question, it is still necessary to keep in mind what the offense charged against appellant was, and of which he was convicted. It was *not* for the *theft* of said copper. In no contingency could he have been convicted of the *theft* of it, nor was he sought to be. The indictment charged him with *receiving the stolen copper knowing it to be stolen*—an entirely separate and distinct offense from the *theft* of it. This is so fully demonstrated by Judge Hurt in McAfee v. State, 14 Texas Crim. App., 668, and Kaufman v. State, supra, it is unnecessary to discuss it or cite the other authorities.

In an indictment for the offense herein charged, "it is not necessary to allege that defendant received the property without the consent of the owner, nor that it was received with the intent to deprive the owner of the value thereof, nor with the intent to appropriate it to the use or benefit of the defendant." And hence, of course, not necessary to prove any of these matters. 2 Branch's Ann. P. C., p. 1365; Nourse v. State, 2 Texas Crim. App., 304; Brothers v. State, 22 id., 447; Frail v. State, 57 S. W. Rep., 92. In an indictment for theft each and all of said allegations are essential (art. 1329, P. C.) and must be both alleged and proved.

In this case, the *gist* of the offense—the *acts*—the *main* facts—the *factum probandum*—the *offense* itself, is, that appellant *received said stolen copper knowing it to be stolen*. Not that any certain person, known or unknown, stole it. It is wholly immaterial whether appellant knew who the thief was, or when, where or how he stole the copper.

In Grande v. State, 37 Texas Crim. Rep., 51, this court, speaking through Judge Davidson, said: "The gist of the offense is receiving

the property with knowledge on the part of the receiver that it has been stolen." It is never necessary for the State to prove that any certain person stole the property, nor that the defendant knew at the time he received it who stole it. All that is necessary for the State to prove on this point under the very terms of the statute itself (art. 1349, P. C.) is, that the defendant received the property, and at the time, "knowing the same to have been so acquired"—stolen.

The law of this State as to when a charge on circumstantial evidence should be given, and when it should not be given, is as certain and fixed as any law can well be, and has been from before the creation of this court. · The decisions are unanimous, uniform and in great number.

Judge White in his Ann. C. C. P., section 813, subdivision 1, says such charge is required "where the evidence to prove the *offense is purely and wholly circumstantial.*" He cites a large number of the earlier cases directly in point. Mr. Branch, in his Crim. Law, p. 107, and in his 2 Ann. P. C., sec. 1873, p. 1039, is to the same effect. In both of these books he cites many cases directly in point.

Judge White in section 813, subdivision 2, also says, "it is *only* in cases *of, or purely dependent upon, circumstantial evidence,* that the court is required to instruct upon the rules of law applicable to such evidence," citing a large number of the earlier cases in point. To precisely the same effect Mr. Branch states the law in both his said works on the pages given, and he cites many cases in point. There is no case decided by this court to the contrary. They are all to the same effect down to this time.

In the recent case of Sullenger v. State, 79 Texas Crim. Rep., 98, 182 S. W. Rep., 1140, this court quoted and expressly approved this unquestionably correct statement of the law by Mr. Branch:

"If defendant admits that he did the *killing* in a murder case, or the *taking* in theft, or that he did the *act* which constitutes the *factum probandum, whatever be the offense charged,* it is not necessary to charge on circumstantial evidence. Barnes v. State, 53 Texas Crim. Rep., 628, 111 S. W. Rep., 943; High v. State, 54 Texas Crim. Rep., 333, 112 S. W. Rep., 939; Dobbs v. State, 51 Texas Crim. Rep., 629, 103 S. W. Rep., 918; Clore v. State, 26 Texas Crim. App., 624, 10 S. W., 242; House v. State, 19 Texas Crim App., 227; Keith v. State, 50 Texas Crim. Rep., 63, 94 S. W. Rep., 1044; Self v. State, 28 Texas Crim. App., 409, 13 S. W. Rep., 602; Usher v. State, 47 Texas Crim. Rep., 93, 81 S. W. Rep., 309; Gann v. State, 42 Texas Crim. Rep., 133, 59 S. W. Rep., 896; Huffman v. State, 28 Texas Crim. App., 174, 12 S. W. Rep., 588."

"Where an act has been proved by direct evidence, a charge on circumstantial evidence is not required because the intent with which the act was committed is sought to be established by circumstances. Williams v. State, 124 S. W. Rep., 955; Flagg v. State, 51 Texas Crim. Rep., 603, 103 S. W. Rep., 855; Dobbs v. State, 51 Texas Crim. Rep., 629, 103 S. W. Rep., 918; Roberts v. State, 44 Texas Crim. Rep., 267,

70 S. W. Rep., 423; Alexander v. State, 40 Texas Crim. Rep., 395, 49 S. W. Rep., 229; Russell v. State, 38 Texas Crim. Rep., 590, 44 S. W. Rep., 159; Houston v. State, 47 S. W. Rep., 468; Becker v. State, 50 S. W. Rep., 949."

Again Mr. Branch unquestionably correctly states the law: "The fact that the only direct testimony comes from an accomplice witness does not make it necessary to charge on circumstantial evidence. Wampler v. State, 28 Texas Crim. App., 352, 13 S. W. Rep., 144; Thompson v. State, 33 Texas Crim. Rep., 217, 26 S. W. Rep., 198; Kidwell v. State, 35 Texas Crim. Rep., 264, 33 S. W. Rep., 342; McKinney v. State, 48 Texas Crim. Rep., 402, 88 S. W. Rep., 1012; Tune v. State, 49 Texas Crim. Rep., 445, 94 S. W. Rep., 231; Perry v. State, 69 Texas Crim. Rep., 644, 155 S. W. Rep., 263; Johnson v. State, 72 Texas Crim. Rep., 387, 162 S. W. Rep., 512." (2 Branch's Ann. P. C., p. 1040.)

Again he correctly states the law: "Proof that defendant admitted to having killed the deceased (or as proven in this instance, that appellant received the copper, and at the time knew it was stolen) is direct and not circumstantial evidence of the main inculpatory fact, and a charge on circumstantial evidence is not required when proof of such admission is in evidence. Heard v. State, 24 Texas Crim. App., 103, 5 S. W. Rep., 846; Smith v. State, 28 Texas Crim. App., 309, ,12 S. W. Rep., 1104; White v. State, 32 Texas Crim. Rep., 625, 25 S. W. Rep., 784; Hedrick v. State, 40 Texas Crim. Rep., 532, 51 S. W. Rep., 252; Gantt v. State, 105 S. W. Rep., 799; Strickland v. State, 161 S. W. Rep., 110; Womack v. State, 74 Texas Crim. Rep., 640, 170 S. W. Rep., 139; Cook v. State, 75 Texas Crim. Rep., 350, 171 S. W. Rep., 227; Guerrero v. State, 75 Texas Crim. Rep., 558, 171 S. W. Rep., 733." (2 Branch's Ann. P. C., p. 1039.)

Mr. Branch again states the law: "If there is direct testimony from any source that defendant killed the deceased (or as in this case that appellant received the stolen copper, at the time knowing it was stolen) then there is direct evidence of the main fact to be proved and the case does not wholly rest upon circumstantial evidence," citing a large number of cases directly in point. (2 Branch's Ann. P. C., sec. 1874.)

And again: "Where there is direct evidence from any source that defendant killed the deceased, a charge on circumstantial evidence is not required because the intent with which the homicide was committed is only to be inferred from circumstances," citing many cases. (2 Branch's Ann. P. C., p. 1039.)

And still again: "A charge on circumstantial evidence is not required if there is proof that deceased, either as a part of a dying declaration or as a part of the *res gestae,* stated that defendant shot him," citing many cases. (2 Branch's Ann. P. C., p. 1040.)

All these principles are stated also in 2 Vernon's Ann. C. C. P., pp. 445, 446, 447, where nearly two pages of cases are collated and cited.

Each and all these principles as fully and completely apply to each

and every other offense, and the offense herein, as to a killing, and they exclude the idea that any charge on circumstantial evidence should have been given herein.

It was necessary for the testimony to show that said copper was worth $50 or over, in order to convict for a felony. It is equally true that venue in El Paso County had to be proven. But neither nor both of these things was the *gist* of the offense—the *factum probandum*—the *main* facts—the *acts,* constituting the offense. The offense was receiving the stolen copper knowing it to be stolen. Either or both of the above essentials—that the value was $50 or over, and that the venue was in El Paso County, could be proven by circumstantial testimony alone, and yet no charge on circumstantial testimony was necessary because thereof. If a charge on circumstantial testimony had to be given every time any material fact, other than the *gist* of the offense— the *acts*—the *main* facts—the offense itself—the *factum probandum,* had to be proven, then in many cases several such charges would have to be given as to every such fact which was proven by circumstantial testimony alone. No case, and no authority, has ever yet held such charge to be necessary.

Appellant cites and relies upon Nichols v. State, 39 Texas Crim. Rep., 80, and other cases following that decision where the facts were applicable. That decision, under the facts of that case, was undoubtedly correct, and is not questioned. But instead of being in favor of, it is directly against, appellant's contention. The appellant therein was indicted for passing a *forged instrument knowing it to be forged.* The court, through Judge Hurt, said: "It is urged on the part of the State that the act of passing the alleged forged instrument was proven by direct and positive testimony, and although the forgery of said instrument, and that appellant knew when he passed it that it was forged, was proven by circumstantial testimony, this did not constitute the case one of circumstantial evidence alone. It may be conceded that the case is not one consisting of circumstantial evidence alone; nevertheless it occurs to us that the gravamen or gist of the offense here does consist of circumstances. Indeed, the main inculpatory facts are proved by circumstantial evidence. In the offense of passing a forged instrument, an essential ingredient thereof is that such instrument was forged, and that the utterer knew that it was at the time he passed it. The mere passing of an instrument amounts to nothing unless the other essential elements be established, towit, the forgery and the knowledge on the part of the utterer. These are the main or essential facts to be proved, and, where they are established alone by circumstantial evidence, a charge on that subject, when requested, should be given, and a failure to charge, when properly excepted to, will constitute error." It is seen, as stated therein, the fact that it was proven by positive evidence that appellant therein *passed* the instrument, was not the "gravamen or gist of the offense." "The mere passing of an instrument amounts to nothing unless the other essential

elements be established, towit, *the forgery and the knowledge on the part of the utterer. These are the main or essential facts to be proved."* Judge Hurt in that opinion specifically again says: "The essential elements constituting the offense charged was not the mere passing of an instrument, *but the passing of a forged instrument with knowledge on the part of the utterer at that time that it was a forgery."*

This court, through Judge Henderson, in Gaut v. State, 49 Texas Crim. Rep., 495, cited, quoted from and discussed said Nichols case, restating what Judge Hurt held therein as the *gravamen* or *gist* or *essential elements,* of that offense. Then he briefly recited the testimony "tending to show knowledge on the part of appellant" that the instrument he passed was a forgery, and said: "While we fully recognize the doctrine laid down in Nichols v. State, supra, yet we believe the facts in this case ·place appellant in juxtaposition to the main fact, i. e., the circumstances showing his knowledge that said instrument was forged, indicating that he forged it, brings him in such proximity or juxtaposition in regard to the question of knowledge° as to take this case out of the realm of circumstantial evidence." So in this case, that some unknown person stole the copper was not the gist of the offense, but the essential facts were that he received the stolen copper, knowing at the time that it was stolen.

The positive testimony of Cohn, of Jones, of West, and of appellant's own admissions, without doubt, was amply sufficient to show, and did show, that appellant received said stolen copper; and the positive testimony of Goodwin and Morales that appellant admitted to them, "I knew at the time I bargained for it (said stolen copper) it was stolen off the train; I knew when I paid for it, it was stolen off the train," without doubt, was amply sufficient to show, and did show, that at the time appellant received said stolen copper he knew it had been stolen; and his said admissions, without doubt, were ample to show, and did show that said copper had been stolen. So that every essential element of the offense was proven by positive, and neither was proven, by circumstantial evidence alone. Hence, no charge on circumstantial evidence should have been given.

Undoubtedly the motions for rehearing should be overruled, and the affirmance should stand. I dissent from the reversal.